In the Matter of ANNETTE DOZIER et al., Appellants, v NEW YORK CITY et al., Respondents.

Second Department, August 10, 1987

## APPEARANCES OF COUNSEL

*O'Donnell & Schwartz (Carl Rachlin* and *Manlio DiPreta* of counsel), for appellants.

*Peter L. Zimroth, Corporation Counsel (Pamela Seider Dolgow* and *Barry P. Schwartz* of counsel), for City of New York, respondent.

*Albert C. Cosenza (Eugene Freidus* of counsel), for New York City Transit Authority, respondent.

## OPINION OF THE COURT

SPATT, J.

■ In the continuing judicial exploration of the legality of drug testing, we hold that an applicant for a position as conductor with the New York City Transit Authority may be tested for drug usage provided that prior notice is afforded the applicant. In this case, sufficient prior notice was given, and the three petitioners, who held positions as conductors on probationary status, were properly discharged.

THE FACTS:

In September 1981, the petitioners took a civil service examination for the position of conductor with the New York City Transit Authority (hereinafter the Transit Authority). The notice of examination expressly provided: "Eligibles on a list shall be required to pass a qualifying medical test prior to appointment. ANY IMPAIRMENT WHICH WILL ADVERSELY AFFECT ABILITY TO PERFORM THE DUTIES OF THE POSITION OR FAILURE TO MEET THE MEDICAL STANDARDS SET FOR A POSITION SHALL CONSTITUTE GROUNDS FOR A DISQUALIFICATION."

Medical standards required for the position were posted and distributed. Under medical standard No. 3 for the position of conductor, the "use of drugs or chemicals, which interferes with normal functions" was a ground for automatic rejection. The announcement also notified applicants that they were subject to investigation into their qualifications for appointment; and that if the investigation disclosed information that would have been grounds for disqualification, the candidate would have his or her appointment revoked and would be terminated from employment.

The petitioners passed the written examination and were placed on the civil service eligibility list. In October 1984, they were notified to appear for compulsory preemployment medical examinations. As part of the examination, each petitioner was required to fill out a medical questionnaire. Each petitioner answered "no" to the following question: "Do you have * * * any of the medical conditions listed below * * * 7. Alcoholism or use of any narcotic, addictive or hallucinatory drug". Each petitioner was also required to provide a urine sample at the initial medical examination.

After their medical examinations, the petitioners were marked medically qualified; and, on or about October 15, 1984, they were appointed to the position of probationary conductor. However, the petitioners were informed, and acknowledged in writing, that their appointments were "subject to satisfactory findings" of their medical tests.

Thereafter, the Transit Authority received the results of the analyses of the petitioners' urine samples which, in two separate tests, revealed the presence of marihuana. As a result, and within 10 days of their initial appointments, the Transit Authority placed the petitioners on "no work" status (equivalent to suspension without pay) when they were unable to present a doctor's prescription for marihuana. Subsequently, based on the urinalyses and the apparently false disclaimer of drug use on their medical questionnaires, the Transit Authority requested that the City Personnel Director revoke the certifications of the petitioners and terminate their probationary employment, pursuant to section III, rule 4.3.1 (b) of the Rules and Regulations of the City Personnel Director, which provides as follows: "Investigation of the qualifications and background of an eligible may be made after appointment, and, upon finding facts which, if known prior to appointment, would have warranted disqualification, or upon a finding of illegality, irregularity or fraud of a substantial nature in the

eligible's application, examination or appointment, the certification of such eligible may be revoked by the city personnel director and the employment directed to be terminated, provided, however, that no such certification shall be revoked or appointment terminated more than three years after it is made, except in the case of fraud."

On or about January 14, 1985, and prior to a determination by the Personnel Director on the Transit Authority's decertification requests, the petitioners commenced the instant proceeding seeking a judgment annulling what they claimed were the arbitrary, capricious and unconstitutional terminations of their employment as probationary conductors. The petition also requests the petitioners' reinstatement with back pay and $100,000 in damages. The sole basis for the relief sought was that the terminations of employment had been arbitrarily and unconstitutionally predicated upon the application, without notice, of Transit Authority employee rules to conduct that occurred prior to the petitioners' employment with the Transit Authority. The petition does not specifically allege that the urine test was unconstitutional or conducted in an unconstitutional manner; rather, it consists of general allegations that the dismissals were violative of due process rights under the Fourteenth Amendment.

Final termination notices were sent to the petitioners in January and February 1985, prior to issue being joined. In these notices, the Personnel Director informed the petitioners that they were terminated from employment for "failure to meet medical requirements" based on the urinalysis results. The notifications expressly advised the petitioners of their right to appeal the decision of the Personnel Director to the New York City Civil Service Commission (hereinafter the Commission) within 30 days after the date of the termination notices. Thereafter, the petitioners did appeal to the Commission.[1]

In opposing the petition, the Transit Authority argued, *inter alia,* that (1) the petitioners failed to exhaust their administrative remedies, and (2) in any event, the petitioners' medical disqualifications were "reasonable and proper". In dismissing

1. The petitioners Zampella and Dozier did not appeal from their January 25, 1985 termination notices by February 24, 1985, as advised by the Personnel Director and required by section 812 (c) of the New York City Charter, but rather on March 4 and March 13, 1985, respectively. The petitioner Johnson appealed from the February 13, 1985 notice of termination on March 13, 1985.

the petition, Special Term grounded its determination almost entirely on the petitioners' failure to exhaust their administrative remedies and on the untimely appeals to the Commission by the petitioners Dozier and Zampella.[2] To the extent that it addressed the merits of the petition, the court ruled that, based upon the fraudulent response to the medical questionnaire and the results of the urine specimen analysis, the termination of the petitioners' employment was "neither arbitrary nor capricious and based upon substantial evidence".

CONTENTIONS:

On appeal, the petitioners raise two types of constitutional issues. First, they contend the Transit Authority violated their due process rights by dismissing them on the basis of preemployment drug tests where there was no evidence to show any impairment or unfitness on their part after the commencement of their employment. Second, they contend that the manner in which the drug tests were conducted violated their constitutional rights in that the drug tests were performed "at a time when they were not employees", and they were never informed by the Transit Authority of the purpose behind the urinalysis and its application to them. In essence, the petitioners contend that the drug testing was performed without proper notice to them and therefore violated their constitutional rights, including the right to decline to be tested.

On the other hand, the respondents contend that (1) the case is not "ripe" for review; (2) the petitioners have failed to exhaust their administrative remedies in that their appeals to the Commission had not been resolved at the time of the determination by Special Term; and (3) on the merits, the petitioners' medical disqualifications and the resultant terminations of their employment were not arbitrary, capricious or violative of their due process rights.

AS TO "RIPENESS":

■ The respondents first contend that this case is not ripe for review, based upon the fact that the proceeding was commenced prior to the issuance of the final termination notices to the petitioners. While the exhaustion of administrative remedies rule generally does not apply where agency

2. On April 28, 1986, the Commission affirmed the medical disqualification of the petitioner Johnson. No information has been made available regarding the appeals of the petitioners Dozier and Zampella.

action is challenged as unconstitutional, if the issue is not ripe for review to begin with, then it matters not what constitutes the basis of the challenge. Initially, it cannot be seriously argued that the Transit Authority did not make a "final" determination with respect to the petitioners' continued employment at the time this proceeding was commenced. Further, the lack of final termination notices from the Personnel Director would not appear to preclude the petitioners from maintaining this proceeding, at least insofar as it challenges the constitutionality of the drug-testing procedures. The difference between the "ripeness" and "exhaustion of administrative remedies" concepts was noted by the United States Supreme Court in *Williamson Planning Commn. v Hamilton Bank* (473 US 172, 192-193), as follows: "The question whether administrative remedies must be exhausted is conceptually distinct * * * from the question whether an administrative action must be final before it is judicially reviewable * * * While the policies underlying the two concepts often overlap, *the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury;* the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate" (emphasis supplied).

The Court of Appeals also delineated the difference between the two concepts in *Church of St. Paul & St. Andrew v Barwick* (67 NY2d 510, 521, *cert denied* — US —, 107 S Ct 574), in the following manner: "The ripeness requirement that a plaintiff must make use of available administrative means to forestall the alleged harm should not be confused with the requirement that administrative remedies must be exhausted before an action may be judicially reviewed *(see, Williamson County Regional Planning Commn. v Hamilton Bank,* 473 US, at p[p 192-193] * * * *supra). Ripeness pertains to the administrative action which produces the alleged harm to plaintiff;* the focus of the inquiry is on the finality and effect of the challenged action and whether harm from it might be prevented or cured by administrative means available to the plaintiff. The focus of the 'exhaustion' requirement, on the other hand, is not on the challenged action itself, but on whether administrative procedures are available to review that action and whether those procedures have been exhausted *(see, William-*

*son County Regional Planning Commn. v Hamilton Bank,* 473 US, at p[p 192-193] * * * *supra)"* (emphasis supplied).

Here it is true that the Transit Authority could have ultimately decided to vacate the petitioners' suspensions and reinstate them to their jobs. Nevertheless, at the time of the commencement of this proceeding, the petitioners had suffered an "actual, concrete injury" by virtue of their suspensions without pay. Also, given the almost unlimited discretion the Transit Authority has to discharge a probationary employee, a suspension without pay would probably doom the employee for all practical purposes. Further, this is not a case where "the harm sought to be enjoined [was] contingent upon events which may not come to pass" *(Matter of New York State Inspection Sec. & Law Enforcement Employees v Cuomo,* 64 NY2d 233, 240). The issue of whether the drug-testing procedures employed by the Transit Authority in this instance are unconstitutional does not depend for determination upon further developments or the resolution of factual questions at the administrative level, but is rather a "purely legal" issue *(Church of St. Paul & St. Andrew v Barwick, supra,* at 522-523).

Finally, even if there were a question as to whether the petitioners' claims were fully ripe when the proceeding was commenced, they unquestionably ripened prior to Special Term's consideration of the case. While an obvious problem exists with respect to exhaustion of administrative remedies, the ripeness doctrine is not so inflexible as to require us to ignore the fact that final determinations were rendered prior to issue being joined and are part of the record before us.

EXHAUSTION OF ADMINISTRATIVE REMEDIES:

The respondents also assert, correctly, that the petitioners have failed to exhaust their administrative remedies. The petitioners' suspensions were not "final" for purposes of the exhaustion rule, which is a jurisdictional predicate for maintaining a proceeding pursuant to CPLR article 78 *(see,* CPLR 7801 [1]). Administrative appeals to the Civil Service Commission were available (NY City Charter § 812 [c]; *see, Matter of City of New York v Civil Serv. Commn.,* 60 NY2d 436, 442, *rearg denied* 61 NY2d 759), utilized and unresolved at the time of the commencement of this proceeding.

It is well recognized, however, that the exhaustion of administrative remedies is not required where an agency's action is challenged as unconstitutional *(Watergate II Apts. v Buffalo*

*Sewer Auth.,* 46 NY2d 52, 57; *Matter of Johnson v Blum,* 83 AD2d 731, *revd on other grounds* 58 NY2d 454). This exception to the exhaustion rule is itself subject to qualification. A constitutional claim that hinges upon factual issues reviewable at the administrative level must first be addressed to the agency so that a necessary factual record can be established *(see, Matter of Perrotta v City of New York,* 107 AD2d 320, 324, *affd* 66 NY2d 859; *Matter of Celestial Food Corp. v New York State Liq. Auth.,* 99 AD2d 25, 27, n). Further, the mere assertion that a constitutional right is involved will not excuse the failure to pursue established administrative remedies that can provide the required relief *(see, Matter of Pfaff v Columbia-Greene Community Coll.,* 99 AD2d 887).

Applying these rules to this case, certain of the petitioners' claims are clearly unreviewable on the basis of a failure to exhaust administrative remedies. In this regard, the failure to await a final administrative decision is fatal to their nonconstitutional claims.

To the extent that the petitioners argue that their constitutional rights were violated when they were discharged as a result of a preemployment drug test, a valid constitutional issue has not been raised for purposes of avoiding the exhaustion rule. This claim addresses the issue of whether such a ground is a proper basis for discharge, and whether adequate relief was available through appeal to the Commission. In reality, this contention is primarily a nonconstitutional issue to which has been added "the mere assertion that a constitutional right is involved [and] will not excuse the failure to pursue established administrative procedures that can provide adequate relief" *(Matter of Pfaff v Columbia-Greene Community Coll., supra,* at 888).

However, petitioners also challenge the constitutionality of the drug-testing procedure itself regarding the manner in which the urine tests were conducted, and as to this claim a valid and reviewable constitutional issue has been presented which is not precluded by the exhaustion rule. As to this issue, we note that the Commission is not empowered to decide constitutional questions *(see,* NY City Charter § 813). In sum, the petitioners were not required to exhaust their administrative remedies in order to challenge the legality of the drug-testing procedures conducted by the Transit Authority as part of the required preemployment medical examination.

CONSTITUTIONAL PROPRIETY OF THE DRUG-TEST PROCEDURE

■ The crux of the petitioners' argument is that as persons

not yet employees, they had a constitutional right to be notified that they were to be tested for drugs and to be given an opportunity to decline the test, even at the cost of disqualification from employment. While we agree with the petitioners in principle, we conclude that sufficient notice was provided in this case.

Urine testing for drugs presents the newest constitutional battleground in the ongoing process of reaching a reasonable accommodation between legitimate government interests and individual liberty. Though the law is still developing in the drug-testing area, on one issue the courts have been virtually unanimous: urine testing for drugs is a search and seizure within the meaning of the Fourth Amendment *(see, Matter of Patchogue-Medford Congress v Board of Educ.*, 70 NY2d 57, and cases cited therein; *Capua v City of Plainfield*, 643 F Supp 1507, 1513, and cases cited therein). In *Patchogue-Medford*, the Court of Appeals held that probationary teachers could not be required to submit to urinalysis to detect potential drug abuse in the absence of "reasonable suspicion". The court also stated that, "The State has a legitimate interest in seeing that its employees are physically fit and that their performance is not impaired by illegal drug usage" and that to require a public employee job applicant "to submit to a physical examination to demonstrate fitness is accepted and traditional" *(Matter of Patchogue-Medford Congress v Board of Educ., supra,* at 70).

The Fourth Amendment, however, proscribes only unreasonable searches and seizures. The test of reasonableness under the Fourth Amendment is not capable of precise definition and requires a balancing of the need to search against the invasion of the individual which the search entails *(see, New Jersey v T.L.O.,* 469 US 325, 337; *Bell v Wolfish,* 441 US 520; *Lovvorn v City of Chattanooga,* 647 F Supp 875).

In *Patchogue-Medford (supra),* the court emphasized that there was an intrusion on the "right of privacy" by requiring a person to disrobe and empty his or her bladder, sometimes in the presence of a third person. However, in *Patchogue-Medford,* there was a factual finding that the probationary employees did not waive their constitutional rights with respect to the urine test at issue, nor was this drug test contemplated as part of the medical examination mandated by their collective bargaining agreement.

The facts in the instant case differ materially from those in

*Patchogue-Medford (supra).* Here, we are concerned with private citizens, who are not yet employees, applying for jobs as transit conductors. The Transit Authority had a right to determine that these persons were not impaired by any drug usage. If reasonable notice were given to the job applicants that a drug-positive urinalysis would bar them from employment, the applicant would be furnished with a choice prior to submitting to such a test. Applying the common threads from the case precedents to the testing procedures at bar, we conclude that while the test itself was justified, the manner in which the testing was conducted would be unreasonable if, in fact, no prior notice were given to the applicants.

The Transit Authority had the obligation to "carefully screen and investigate the backgrounds of employment applicants" *(see, McDonell v Hunter,* 612 F Supp 1122, 1130, *mod* 809 F2d 1302), especially for the position of a subway conductor. The notice of examination states, with regard to the duties of a conductor, that he or she "is immediately responsible for the safety, regularity and proper care of trains".

There can be no question that the job involved here is one where the employee has a continuing major responsibility for the safety of the transit-riding public, so that any impairment on the job cannot be tolerated. Drug testing done as part of a routine or required medical examination for new applicants does not implicate the same considerations of intrusiveness, intimidation or embarrassment as drug testing of employees on the job. Therefore, testing applicants for public safety-related jobs is reasonable under the Fourth Amendment if the applicant is given reasonable notice of the drug testing.

Considering the important public safety concerns relating to the job of subway conductor, a urine test for drugs done as part of a required preemployment medical examination constitutes, in this instance, a reasonable search for Fourth Amendment purposes *(see, Seelig v McMickens,* NYLJ, Aug. 7, 1986, at 7, col 2), *provided* that the applicants have been put on notice of at least the possibility that drug testing will occur. Under this analysis, a private citizen will have a Fourth Amendment right to decline a drug test but cannot exercise that right if the testing is done surreptitiously.

Assuming lack of notice, the fact that the drug testing in this case was conducted in such a manner that the petitioners were permitted to begin work before the results were made known, then fired from their jobs based upon a positive test

result, would also arguably implicate the Fourteenth Amendment. Although the petitioners had no property interests in their jobs, their interests in their good names and reputations were implicated in their firing for drug use, thus triggering procedural due process safeguards (see, Capua v City of Plainfield, 643 F Supp 1507, 1520-1521, supra; see also, Matter of Reeves v Golar, 45 AD2d 163, 165). The necessary procedural due process required prior notice of the drug testing. Therefore, the testing procedure employed in this case, if done without notice to the applicants, would violate the Fourth Amendment.

A review of the record in this case reveals that the petitioners were afforded sufficient notice of the possibility of drug testing as part of their preemployment medical examination so as to pass constitutional muster. The "notice of examination" advertising the competitive civil service examination, under the subtitle "medical standards", provided that "eligibles on a list shall be required to pass a qualifying medical test prior to appointment". Immediately following this language, there appeared in capital letters a warning that "any impairment which will adversely affect ability to perform the duties of the position or failure to meet the medical standards set for the position shall constitute grounds of disqualification". The notice of examination also stated that an investigation would be made of their qualifications and background and stated, also in capital letters, that "if an investigation disclosed that the candidate does not meet the requirements for appointment he or she shall be disqualified. If an investigation conducted anytime up to three years after appointment discloses that the candidate does not meet the requirements for appointment, the appointment shall be revoked and his or her employment terminated".

Further, the posted and distributed "medical standards" available to the petitioners prior to their preemployment medical examination expressly warned petitioners of the following: "3. The use of drugs or chemicals, which interferes with normal functions, rejects."

Also, as part of their medical examinations, the petitioners were required to complete a medical questionnaire and to supply a urine sample. In response to question 7 on the questionnaire, the petitioners were expressly asked whether they suffered from, "Alcoholism or use of any narcotic, addictive or hallucinatory drug". The petitioners all responded "no" to this question. While an explicit warning would have

been preferable, under the totality of the circumstances of this case this cumulative series of warnings was sufficient to alert the petitioners that drug testing by urinalysis could occur.

Nor is there merit to the petitioners' contention that due process was violated in the manner of their employment and suspension. They were appointed probationary conductors prior to the receipt of the results of the urinalysis and other medical tests. However, they all acknowledged in writing that, "I understand my appointment as conductor * * * is subject to satisfactory findings of medical test".

The petitioners were given clear notice of the consequences of the discovery of drug use and cannot complain that their liberty interests in their good names and reputations were adversely affected in violation of the Due Process Clause. These notifications and warnings significantly diminished the expectation of privacy which the petitioners would have retained as private citizens without such prior notice. The circumstances under which the petitioners provided the urine samples in their preemployment medical examinations further limited the expectation of privacy and underscore the reasonableness of the search *(see, McDonell v Hunter,* 612 F Supp 1122, 1130-1131, *mod* 809 F2d 1302, *supra; Lovvorn v City of Chattanooga,* 647 F Supp 875, *supra).* Thus, the drug-testing procedure utilized was a reasonable and permissible search under the Fourth Amendment.

We note that, as to the nonconstitutional claims, the petitioners as probationary employees had no property rights in their positions and could be discharged without a hearing and without a stated specific reason, provided they were discharged in good faith and not in violation of constitutional, statutory or decisional law *(see, Matter of Montero v Lum,* 68 NY2d 253; *Matter of York v McGuire,* 63 NY2d 760; *Matter of Talamo v Murphy,* 38 NY2d 637; *Matter of Bonacci v Quinones,* 124 AD2d 659; *Matter of Cardo v Murphy,* 104 AD2d 884; *see also, Matter of Giannandrea v Meehan,* 117 AD2d 806, *lv denied* 68 NY2d 612, in which a probationary police officer was suspended when, in his final medical examination, an analysis of his urine revealed the presence of cannabis). Given the public safety considerations inherent in the jobs to which the petitioners were appointed and in view of the standard applicable to probationary employees, evidence of recent use of marihuana would have to be considered a sustainable ground for discharge *(see, Matter of Giannandrea v Meehan, supra).*

■ ■ In sum, we find that the petitioners were not drug tested in violation of their constitutional rights, and that any remaining claims are unreviewable on the ground of their failure to exhaust administrative remedies. Accordingly, the judgment dismissing the proceeding should be affirmed.

MANGANO, J. P., KUNZEMAN and KOOPER, JJ., concur.

Ordered that the judgment is affirmed, with one bill of costs payable to the respondents appearing separately and filing separate briefs.