OPINION OF THE COURT
David H. Edwards, Jr., J.
In this action brought by plaintiff and charging defendant with violation of the Human Rights Law (HRL) (Executive Law § 296 [1] [a]; § 292 [21]), defendant Roe, Inc. (Roe) moves for an order dismissing the complaint for failure to state a cause of action (CPLR 3211 [a] [7]).
Plaintiff John Doe (pseudonym, as is Roe, Inc.) applied for *157 employment as a financial analyst with Roe, a private investment banking firm. As part of the preemployment screening process, plaintiff submitted to a physical examination and urinalysis test. The test revealed the presence of opiates in plaintiff’s urine. A second test was performed which confirmed the presence of opiates in plaintiff’s urine and identified them as codeine and morphine. Plaintiff attributed the test results to his ingestion of a health bread containing poppy seeds. Plaintiff offered scientific literature which tended to support his explanation and also offered to submit to a physical examination to substantiate his denial of opiate abuse. Roe, however, rejected plaintiff’s offers and informed Doe he would not be hired for the position.
On or about April 11, 1988, plaintiff commenced this action alleging one cause of action based on Roe’s violation of section 296 (1) (a) and section 292 (21) of the Executive Law, in that, in refusing to hire plaintiff, Roe illegally discriminated against plaintiff on the basis of a perceived "disability” of drug addiction and without regard to plaintiff’s ability to perform the functions of a financial analyst. The complaint also seeks an order directing defendant Roe to hire plaintiff with back pay and benefits together, with $150,000 in damages plus costs and legal fees.
Executive Law § 296 (1) (a) and § 292 (21) read as follows:
"§ 296. Unlawful discriminatory practices
"1. It shall be an unlawful discriminatory practice:
"(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex or disability, or marital status of an individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.”
"§ 292. Definitions
"When used in this article * * *
"21. The term 'disability’ means (a) a physical mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques * * * provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which do not prevent the complainant from performing in a *158 reasonable manner the activities involved in the job or occupation sought”.
Thus, the HRL forbids discrimination on the basis of a person’s actual or perceived disability, now defined as including physical, mental or medical conditions which do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought. The Division of Human Rights regards alcohol and drug abuse as disabilities within the meaning of the HRL having adopted provisions of Mental Hygiene Law § 1.03 (3) which define alcoholism or substance dependence as a "mental disability”.
At the outset, the court notes the paucity of decisional law in this area of the law, particularly with respect to private employers. Neither is the court unaware that this action may involve significant issues of constitutional law, however, since those issues have not been articulated by the litigants nor, are they seen as germane to a determination of the present motion to dismiss, the court need not reach them.
Over the past several years an increasing number of public and private employers have begun to require both job applicants and employees to undergo drug screening tests. As the use of drug screening tests increased so has the controversy surrounding their use and questions concerning the acceptable bounds of inquiry into an employee’s or applicant’s personal medical, physical and mental history. Of course, the debate involves a sensitive balancing of the employer’s need to hire employees unimpaired by drug or other substance abuse problems, which will adversely affect the employee’s job performance and which may pose substantial and unwarranted risks of harm to the employee, his co-workers or the public, as against the employee’s (applicant’s) need to be protected from discriminatory employment procedures and unnecessary intrusions upon his privacy. With these concerns in mind, the Court of Appeals has recognized the State’s legitimate interest in seeing that its employees are not impaired by drug usage and that to require a public employee or job applicant to submit to a physical examination to demonstrate fitness "is accepted and traditional” (Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 70; see also, Dozier v New York City, 130 AD2d 128, 136). In recent days, even the United States Supreme Court has recognized the Government’s interest in creating a "drug free workplace” and has upheld the drug testing programs begun by the Reagan administration for the railroad industry and employ *159 ees of the United States Customs Service (Skinner v Railway Labor Executives’ Assn., 489 US -, 103 L Ed 2d 639). While these "rulings do not directly affect private employment * * * [these] decisions likely will encourage private employers who impose or plan to impose such tests” (NYLJ, Mar. 22, 1989, at 1, cols 3-4).
On the other hand, both Federal and State constitutional provisions protect workers in public employment from being deprived of jobs in an unreasonable manner or without a rational (that is, job-related) basis mainly, on the ground of illegal search and seizures arising under the Fourth Amendment of the US Constitution. But, such issues are not present or relevant to inquiries made by private employers like defendant Roe. Thus, given the dearth of controlling law on the subject, this court finds that the question of whether an employer, and in particular a private employer, may lawfully require its employees or job applicants to undergo drug screening urine tests is not yet clear.
Turning to the facts herein, plaintiff argues that as a perceived drug abuser he is protected under the HRL against discriminatory hiring practices, including a refusal to hire, so long as he can reasonably perform the functions of the job or occupation sought. In 1979, in amending the Human Rights Law, the Legislature specifically imposed an "individualized standard” such that the employer must demonstrate that the disability is such as would prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought, failing which, the disability may not be the basis of rejecting the applicant (Matter of State Div. of Human Rights [Granelle], 70 NY2d 100, 106).
In addition to the statute, plaintiff relies on the opinions of the General Counsel of the State Division of Human Rights and the Division’s Rulings on Inquiries promulgated under the HRL to support his position. In particular, plaintiff proffers the general counsel’s opinions in the cases of Perez v State of New York (Nov. 21, 1979) and Moxley v Regional Tr. Auth. (Oct. 28, 1987). Although these cases involve public employers and differ materially from the facts in this case, both Perez and Moxley clearly establish that drug abuse alone cannot automatically disqualify a job applicant or serve as a ground for termination of an employee so long as the applicant or employee is able to reasonably perform the functions of the job in question.
*160 In Perez (supra), the complainant was in a methadone program when he applied for employment with the State Department of Civil Service. The complainant was denied the job on the ground that he was methadone dependent. On review, the Appellate Division, First Department (Perez v New York State Human Rights Appeal Bd., 70 AD2d 558), annulled the dismissal of the complaint and remanded to the Division for further proceedings to determine, among other things, whether methadone dependency is a disability and whether methadone dependency prevented the complainant from performing in a reasonable manner the activities involved in the job sought. On remand, the Division adhered to its determination that drug addiction was a disability and conducted further investigation to determine whether methadone dependency did or did not prevent complainant from performing in a reasonable manner the activities involved in the job he sought. As an aside, it is noted that the Division’s decision to extend protection to drug abusers in treatment or seeking treatment is consistent with sections 503 and 504 of the Federal Rehabilitation Act (29 USC §§ 793, 794) which prevents an employer receiving Federal financial assistance from discriminating against an "otherwise qualified individual with handicaps”, defined for employment purposes as any person who has or is perceived as having "a physical or mental impairment”. (29 USC § 706 [8] [B].) It is noted that Congress amended the Act to provide expressly that for purposes of employment discrimination, "the term 'handicapped individual’ . . . does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.” (See, Burka v New York City Tr. Auth., 680 F Supp 590, 596.)
In Moxley (supra), the other case cited by plaintiff, the complainant, a bus driver, was terminated from his position when he tested positive for cocaine use during a urine drug screen administered as part of a back-to-work physical. The Division on receiving the complaint sought the advice of its General Counsel on how to proceed. The Division was directed to conduct a public hearing to determine the facts surrounding the employer’s drug testing policy, including whether the *161 employer may legally discipline or terminate employees solely on the basis of such tests.
In the context in which defendant Roe’s action has been challenged — a motion to dismiss for failure to state a cause of action (CPLR 3211 [a] [7]; see also, Executive Law § 297 [9] [which authorizes a cause of action to recover damages by any person claiming to be aggrieved by unlawful discriminatory practice in any court of appropriate jurisdiction]), the court is obliged to assume the truth of the facts asserted in the complaint and the affidavits opposing dismissal (Rovello v Orofino Realty Co., 40 NY2d 633), and accord plaintiff the benefit of all favorable inferences that may be drawn from his pleadings (see, CPC Intl. v McKesson Corp., 70 NY2d 268, 284-285). Applying this standard to plaintiff’s contentions, I find that a cause of action has been stated. It is, therefore, defendant’s burden to come forward with evidence to rebut plaintiff’s showing of a prima facie case of discrimination (see, McDonnell Douglas Corp. v Green, 411 US 792, 802-805).
The plaintiff’s cause of action rests on allegations that Roe has engaged in a discriminatory employment practice by (1) unlawfully subjecting him to a urinalysis test as a condition of employment without demonstrating that such a test is job related (Revisions in Ruling on Inquiries, Aug. 1, 1988, at 15, 21); and (2) refusing to hire plaintiff on the basis of such test result without evaluating plaintiff’s capacity to reasonably perform in the position sought.
Accepting as I must the Division’s definition of "disability” (Matter of Bates v Toia, 45 NY2d 460, 464) and that plaintiff Doe is a protected disabled person within that definition, this court is compelled to conclude that Roe, even as a private employer, is "required to evaluate [the] disabled applicant or employee on his merits, hiring or discharging him only if he can or cannot in fact perform the duties of the job in question. The central concern is the capacity of the individual” (City of New York v Donnaruma, 70 AD2d 856; Board of Educ. v New York State Div. of Human Rights, 42 AD2d 49, 52, affd 35 NY2d 673). The record before this court indicates that this was not done but rather, defendant summarily rejected applicant Doe once it received the positive test results. This decision, apparently, based on the drug test results alone was unlawful and discriminatory in effect. Whether defendant can successfully rebut the inference of discrimination by demon *162 strating that plaintiffs disability prevents him from performing the duties of financial analyst in a reasonable manner must await plenary trial.
Accordingly, defendant’s motion to dismiss the complaint for failure to state a cause of action is denied.