In the Matter of RAPHAEL BARRETTO, Petitioner, v CITY OF NEW YORK et al., Respondents.

Second Department, May 7, 1990

## APPEARANCES OF COUNSEL

*Robert M. Simels, P. C.,* for petitioner.

*Albert C. Cosenza (George S. Grupsmith* of counsel), for Robert R. Kiley, respondent.

## OPINION OF THE COURT

HARWOOD, J.

■ ■ In addition to presenting questions more customarily arising in proceedings against a body or officer *(see,* CPLR 7801, 7803 [3], [4]), this litigation requires that we determine whether a public employer, in conformity with the Fourth Amendment of the US Constitution, may, because of a particular event, compel a particular public employee to submit to drug screening tests, notwithstanding that the happening of the event does not by itself provide a reasonable suspicion that the public employee is unfit for duty on account of illegal drug use. Because we conclude that the New York City Transit Authority was so entitled, and because the determination of its Chairman to discharge the petitioner is otherwise valid, we confirm that determination.

The petitioner was employed by the New York City Transit Authority (hereinafter the Transit Authority) as a detective specially assigned to a "Joint Terrorist Task Force" operated

in conjunction with the New York City Police Department and the Federal Bureau of Investigation. On March 18, 1986, while responding during an on-duty undercover operation to "a situation where a man needed help", the petitioner was involved in an automobile accident. He was driving a Transit Authority automobile with its red light flashing and its siren operating, and, while "responding to movement of subject", drove through a red light. His vehicle was then struck by a vehicle driven by a civilian. When the petitioner, who suffered a knee sprain as a result of the accident, advised the Transit Authority that he would be unable to report for work, he was directed to appear on the following morning at a Transit Authority clinic for an "ability to perform examination", an examination routinely conducted after an accident, which consists, in part, of a urinalysis test for the purpose of drug detection. Although the petitioner never directly refused to submit to the drug screening test, he initially advised the Transit Authority police officer who was present to witness his submission of a urine specimen that he was physically unable to produce a specimen. The petitioner subsequently left the Transit Authority clinic without having provided a urine specimen and proceeded to a "HIP" medical center, allegedly to seek medical treatment for his injured knee. He then contacted the Transit Authority Police Department "sick desk" to apprise the Department of his whereabouts, and was later directed by a Transit Police Department sergeant to remain at the HIP center until the sergeant arrived. Despite the sergeant's order, the petitioner left the HIP center shortly thereafter, when his girlfriend arrived to pick him up.

Alleging that the petitioner was advised that the failure to comply with an order to provide a urine specimen would result in disciplinary action, that the petitioner nonetheless failed to do so, and that he disobeyed a superior officer's order to remain at the HIP center until the superior officer arrived, the Transit Authority preferred formal misconduct and incompetence charges against the petitioner. Following an evidentiary hearing at which some evidence was adduced indicating that the petitioner had initially denied he was the driver of the vehicle, the Hearing Officer sustained the charges and recommended that the petitioner be dismissed from service, finding that his refusal to submit to the drug screening test and his subsequent conduct constituted insubordination and raised a strong presumption of unauthorized drug use. In December 1985 the Chairman of the Transit Authority

adopted the findings and recommendation and dismissed petitioner, who commenced this proceeding to review its determination. The petitioner claimed that the record did not contain substantial evidence to support the determination and that the Transit Authority's directive that he submit to urinalysis was not predicated upon reasonable suspicion that he had been ingesting drugs, and was thus violative of his Federal constitutional right to be free of unreasonable searches and seizures. We conclude that neither claim warrants overturning the determination, which we hereby confirm.

■ We reject the petitioner's contention that insufficient evidence was adduced at the administrative hearing to sustain the charges of misconduct. Although the petitioner denied at the hearing that he had ever been directly ordered by a superior officer to submit to a drug screening test, several Transit Authority witnesses maintained that the petitioner was fully advised both of the fact that he was required to submit to the test and that he would be subject to disciplinary sanctions if he failed to do so. It is well settled that an administrative finding as to the credibility of witnesses and the inferences to be drawn from the evidence presented are conclusive where supported by substantial evidence (see, Matter of Di Maria v Ross, 52 NY2d 771, 772; Matter of Avon Bar & Grill v O'Connell, 301 NY 150). Moreover, the petitioner's actions in leaving the Transit Authority clinic without informing clinic personnel that he was leaving, and in leaving the HIP center after being ordered to remain, further support the Hearing Officer's conclusion that the petitioner was intentionally seeking to avoid submitting to the test.

■ Turning to the petitioner's constitutional claim, although we have observed that the law is still developing in the drug testing area (see, Matter of Dozier v New York City, 130 AD2d 128, 136), it has nevertheless been uniformly concluded that the Government's act of requiring a person to submit to urine testing for drugs constitutes an intrusion upon an individual's expectation of privacy which must be deemed a search under the Fourth Amendment (see, Skinner v Railway Labor Executives' Assn., 489 US 602, 109 S Ct 1402; National Treasury Employees Union v Von Raab, 489 US 656, 109 S Ct 1384; Matter of Caruso v Ward, 72 NY2d 432; Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57). The Fourth Amendment, however, proscribes only unreasonable searches and seizures (see, Skinner v Railway Labor Executives' Assn., supra; Carroll v United States, 267 US 132),

and in determining reasonableness, a court must balance the intrusiveness of the search against the promotion of legitimate governmental interests *(see, Skinner v Railway Labor Executives' Assn., supra; Delaware v Prouse,* 440 US 648, 654). As the Court of Appeals recently observed in *Matter of Caruso v Ward (supra,* at 437), "a search by a public employer may be justified at its inception 'when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct, or that the search is necessary for a noninvestigatory work-related purpose' ". Moreover, drug testing in the absence of individualized suspicion is reasonable within the meaning of the Fourth Amendment where the public employment is peculiarly sensitive *(see, e.g., Matter of Caruso v Ward, supra; see also, Matter of Seelig v Koehler,* 151 AD2d 53), or where, because of a direct bearing of the mental faculties of the public employee on the health and safety of others, a "triggering event" *(see, Skinner v Railway Labor Executives' Assn., supra,* 489 US, at —, 109 S Ct, at 1416; *see also, Matter of Seelig v Koehler, supra,* at 65-66), such as an automobile accident *(cf., Fiorenza v Gunn,* 140 AD2d 295, 299), mandates employer inquiry.

Applying these principles to the circumstances of the instant case, including the sensitive nature of the petitioner's employment, we conclude that the petitioner's on-duty involvement in a vehicular accident provided a reasonable basis for the invasion of the petitioner's privacy which the order to produce a urine specimen occasioned. Accordingly, the Transit Authority's promptly issued directive that the petitioner undergo such testing after the accident was justified at its inception, and was not violative of his Fourth Amendment rights *(see, Skinner v Railway Labor Executives' Assn., supra).*

■ Further, the penalty of dismissal, when considered in light of all of the circumstances of this case, was not so disproportionate to the offense as to be shocking to one's sense of fairness *(see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176; *Matter of Pell v Board of Educ.,* 34 NY2d 222). In this regard we note that a high degree of deference is to be accorded to an agency's determination regarding the penalty imposed, particularly where matters of internal discipline in a police department are concerned *(see, Matter of Willis v Meehan,* 131 AD2d 683; *Matter of Meyer v Rozzi,* 108 AD2d 859).

We have examined the petitioner's remaining contention

and find that it is without merit. Accordingly, the determination is confirmed, and the proceeding is dismissed on the merits, without costs or disbursements.

BRACKEN, J. P., SULLIVAN and ROSENBLATT, JJ., concur.

Adjudged that the determination is confirmed and the proceeding is dismissed on the merits, without costs or disbursements.