Matter of Burke v New York City Tr. Auth. (2020 NY Slip Op 08133)





Matter of Burke v New York City Tr. Auth.


2020 NY Slip Op 08133


Decided on December 31, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 31, 2020

527868

[*1]In the Matter of the Claim of Brian Thomas Burke, Appellant,
v
New York City Transit Authority, Respondent. Workers' Compensation Board, Respondent.

Calendar Date: November 16, 2020

Before: Garry, P.J., Lynch, Clark, Mulvey and Reynolds Fitzgerald, JJ.


Brian Thomas Burke, New York City, appellant pro se.
Foley, Smit, O'Boyle & Weisman, New York City (Michael P. Furdyna of counsel), for New York City Transit Authority, respondent.



Lynch, J.
Appeal from a decision of the Workers' Compensation Board, filed April 17, 2018, which ruled, among other things, that claimant's employment was not terminated in violation of Workers' Compensation Law § 120.
Claimant worked as a subway train operator for the New York City Transit Authority (hereinafter the employer) between February 2001 and March 2015. In 2014, claimant filed a claim for workers' compensation benefits, alleging that he had suffered work-related psychological injuries due to harassment by supervisors.[FN1] A Workers' Compensation Law Judge (hereinafter WCLJ) disallowed that claim following a hearing and the Workers' Compensation Board affirmed, finding that claimant failed to establish that the stress he experienced was any greater than that of similarly situated workers in the normal work environment. This Court affirmed the Board's decision upon claimant's appeal (148 AD3d 1498 [2017]).
In January 2015, the employer sent claimant a letter notifying him of its intent to terminate his employment, effective April 18, 2015, due to his "absen[ce] and/or [inability] to perform the duties of [his] position due to a non-service connected illness/injury since [April 18, 2014]" (see Civil Service Law § 73). The letter further advised that claimant "may be eligible for reclassification to another title," and he checked a box on that form electing to be reclassified. Consequently, in March 2015, claimant began training for the position of station agent and was placed on a period of probation in that title.
Shortly thereafter, the New York Post published an article detailing a lawsuit that claimant had filed against the employer, which portrayed him in an unflattering light. In April 2015 — after having completed approximately two weeks in the station agent position — claimant experienced a panic attack while at work. As a result, he applied for workers' compensation benefits, alleging that he had developed a work-related panic disorder after being subjected to questions from coworkers about the New York Post article. The 2015 claim was established for a work-related panic disorder, with the Board finding that claimant was "exposed to stress greater than that which other similarly situated workers experienced in the normal work environment" insofar as the employer had posted the article on its website and left it in common areas.
In February 2016, claimant filed a discrimination complaint with the Board (form DC-120) pursuant to Workers' Compensation Law § 120, alleging that the employer took various actions against him in retaliation for filing his workers' compensation claims, including subjecting him to harassment, reclassifying him to the station agent position, and withholding certain wages and payments to which he was entitled. A few months later, in May 2016, the employer terminated claimant's employment as a station agent — citing "an unsatisfactory probationary period" — and requested that he promptly return all employer[*2]-issued equipment. Following a hearing on claimant's discrimination complaint, a WCLJ determined that claimant failed to demonstrate a nexus between the employer's conduct against him and his pursuit of workers' compensation benefits sufficient to establish a violation of Workers' Compensation Law § 120.[FN2] The Board agreed and affirmed that determination, prompting this appeal by claimant.
We affirm. Workers' Compensation Law § 120 prevents an employer from terminating or otherwise discriminating against an employee who has filed or attempted to file a claim for workers' compensation benefits (see Matter of Duncan v New York State Dev. Ctr., 63 NY2d 128, 131-133 [1984]; Matter of Markey v Autosaver Ford, 181 AD3d 1126, 1127 [2020]; Matter of Romero v DHL Holdings [USA] Inc., 169 AD3d 1124, 1125 [2019]). The burden of proving unlawful retaliation under the statute rests with the claimant, who must demonstrate "a causal nexus between the claimant's activities in obtaining compensation and the employer's conduct against him or her" (Matter of Peterec-Tolino v Five Star Elec. Corp., 178 AD3d 1215, 1216 [2019] [internal quotation marks and citations omitted]; see Matter of Fetahaj v Starbucks Corp., 144 AD3d 1350, 1351 [2016], lv denied 29 NY3d 918 [2017]). The Board "is vested with the discretion to weigh conflicting evidence and evaluate the credibility of witnesses, and its resolution of such matters must be accorded . . . deference" (Matter of Fetahaj v Starbucks Corp., 144 AD3d at 1351 [internal quotation marks and citations omitted]). "With regard to questions of fact and factual inferences to be drawn therefrom, . . . a decision of the [B]oard is 'conclusive upon the courts if supported by substantial evidence'" (Matter of Markey v Autosaver Ford, 181 AD3d at 1127, quoting Matter of Axel v Duffy-Mott Co., 47 NY2d 1, 6 [1979]). Substantial evidence "is a minimal standard and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1046 [2018] [internal quotation marks and citations omitted]). "Where substantial evidence exists, the reviewing court may not substitute its judgment for that of the agency, even if the court would have decided the matter differently" (id. [citations omitted]).
"Inasmuch as employers who seek to discourage their employees from pursuing workers' compensation claims rarely broadcast their intentions to the world, distinguishing a discharge motivated by retaliation from a discharge based upon a legitimate business concern can be challenging" (Matter of Rodriguez v C & S Wholesale Grocers, Inc., 108 AD3d 848, 849-850 [2013] [internal quotation marks and citations omitted]). Nevertheless, upon our careful review of the record, we conclude that substantial evidence supports the Board's determination that claimant failed to establish a violation of Workers' Compensation Law § 120.
Initially, the record does not [*3]support an inference of retaliation with respect to claimant's title reclassification. Rather, the record demonstrates that, upon receiving the January 2015 notice informing claimant of the employer's intent to terminate his employment in accordance with Civil Service Law § 73, he specifically requested to be reclassified to the title of station agent as he had not been medically cleared to return to work as a train operator. Claimant acknowledged as much during the administrative hearing and confirmed that he had checked a box on the January 2015 notice electing to be reclassified.
Nor did claimant establish that the employer placed him on probation in that title in retaliation for pursuing workers' compensation benefits. Instead, the record reveals that claimant was subjected to the same probationary period as similarly situated reclassified employees pursuant to an evenhanded policy (see generally Matter of Duncan v New York State Dev. Ctr., 63 NY2d at 134).[FN3] The employer's chief officer of human resources testified that, pursuant to section 6.1.9 of the rules and regulations of the Department of Citywide Administrative Services of the City of New York (hereinafter DCAS) — which govern the employer's conduct (see Public Authorities Law § 1210 [2]) — employees who are no longer able to perform the essential functions of their positions due to a disability may be reclassified to another position for which they are qualified under the Civil Service Law and must serve a one-year period of probation in that title. He further explained that, under the DCAS rules, a reclassified employee who fails to complete the required probationary period may be terminated (see generally Matter of Dozier v New York City, 130 AD2d 128, 139 [1987]). The employer's senior director for operations training agreed with those assessments, testifying that all medically reclassified employees are generally required to serve a one-year term of probation in their new positions and may be terminated for failing to complete that period as required, regardless of whether they are absent due to a work-related injury. These witnesses explained that, like all other probationary employees who had failed to complete the required probationary term, claimant was terminated from the station agent position because he served only two weeks in that title and then went out on leave and never returned. The testimony of these witnesses was generally substantiated by the documentary evidence, including the plain language of DCAS rule 6.1.9 as set forth in certain personnel bulletins and the reason cited for claimant's termination in the May 2016 termination notice. Although claimant elicited testimony from a union representative who opined that the relevant collective bargaining agreement did not require claimant to serve a new period of probation in the reclassified title, it was the Board's province to weigh conflicting evidence and make credibility determinations (see Matter of Fetahaj [*4]v Starbucks Corp., 144 AD3d at 1351; Matter of Donovan v BOCES Rockland County, 63 AD3d 1310, 1312 [2009]).
Deferring to those determinations, substantial evidence supports the Board's finding that the employer did not engage in retaliation when it reclassified claimant's title, placed him on probation therein, and ultimately terminated his employment in May 2016 (see Matter of Romero v DHL Holdings [USA] Inc., 169 AD3d at 1126; Matter of Fetahaj v Starbucks Corp., 144 AD3d at 1351; Matter of Torrance v Lorretto Rest Nursing Home, 61 AD3d 1124, 1125-1126 [2009]; compare Matter of Markey v Autosaver Ford, 181 AD3d at 1128). We note that the circumstances surrounding claimant's termination — including the temporal attenuation between the filing of his claims and his ultimate discharge from employment — further suggest a nondiscriminatory motive (compare Matter of Axel v Duffy-Mott Co., 47 NY2d at 9).
There is also substantial evidence to support the Board's determination that the employer's conduct of withholding certain wages and payments from claimant did not amount to discrimination under Workers' Compensation Law § 120. In his complaint, claimant alleged that, in retaliation for filing his workers' compensation claims, the employer withheld, among other things, certain waiver and election payments to which he was entitled, as well as wages for the two-week period in which he worked as a station agent. However, two witnesses who investigated the issue independently testified that such wages and payments were withheld due to claimant's failure to return employer-issued property, and claimant acknowledged that he had failed to return certain property to the employer. Notably, claimant signed a form in March 2015 explaining that he would be required to return all employer-issued property upon his separation from employment and that a failure to do so would "result in monies owed [to him] being withheld." The record also contains several letters in which the employer asked claimant to return outstanding property, as well as a May 2016 email in which the employer's administrative support representative requested the withholding of claimant's paycheck based upon his failure to do so. In light of the foregoing, the record amply supports the Board's determination that the employer's proffered reason for withholding such wages and payments was not a pretext for discrimination (see Matter of Gagnon v Foster Med. Supply, 232 AD2d 681, 682 [1996], appeal dismissed 89 NY2d 918 [1996]).
Claimant additionally contends that the employer subjected him to harassment in retaliation for filing workers' compensation claims, emphasizing that he was monitored by supervisors during the course of his employment as a train operator and that the employer posted the New York Post article on its website and in common areas. With respect to the former conduct, this Court concluded on claimant's prior appeal that the evidence supported the Board's determination that [*5]the stress he experienced from being monitored by supervisors was no greater than that which other similarly situated workers experienced in the normal work environment. Accordingly, claimant has failed to establish a nexus between the monitoring he endured as a train operator and the filing of workers' compensation claims. As to the harassment that claimant endured with respect to the New York Post article, we recognize that claimant's 2015 claim was established for a work-related psychological injury based upon the employer's actions of posting the article on its website and in common areas. Nevertheless, the record supports the Board's determination that claimant failed to demonstrate a nexus between the employer's conduct in that regard and the filing of workers' compensation claims sufficient to establish a violation of Workers' Compensation Law § 120.
Garry, P.J., Clark, Mulvey and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: Claimant filed two prior claims for workers' compensation benefits in or around 2007 and 2009.

Footnote 2: Although not included in the discrimination complaint, claimant asserted during the administrative hearing that the employer's actions of subjecting him to a probationary term in the station agent position and ultimately terminating him in May 2016 also amounted to retaliation.

Footnote 3: Claimant asserted at the hearing that he was unknowingly placed on probation in that position against his will. However, the record contains a March 2015 letter bearing claimant's signature in which he was informed that, in order to be reclassified as requested, he would be required to "resign from [his] present title" and "serve a probationary period of one year in the new title, subject to an automatic extension for absences." Although claimant maintained that his signature on that document was forged, the employer proffered a witness who testified that she had observed claimant sign that form.