JOSEPH C. FINLEY et al., Respondents, *v.* FRANCIS T. SPAULDING, as Commissioner of Education of the State of New York, et al., Appellants.

Third Department, December 29, 1948.

*Charles A. Brind, Jr.*, attorney (*Robert C. Killough* of counsel), for appellants.

*Hinman, Straub & Manning* for respondents.

HEFFERNAN, J. Defendants have appealed from an order of the Albany Special Term of the Supreme Court, denying their motion to dismiss the complaint and also from an order of such Special Term granting plaintiffs' application restraining them from taking any further action with regard to the organization of Central School District No. 1 of the Towns of Ontario, Walworth, Macedon, Marion and Williamson, Wayne County, and Webster and Penfield, Monroe County.

On or about June 3, 1948, the Commissioner of Education laid out the central school district with the name and number indicated, comprising the towns enumerated above, pursuant to the provisions of section 1801 of the Education Law.

Thereafter, and in accordance with section 1802 of the same law a petition was presented to the commissioner asking that a meeting be called for the organization of such school district. A special meeting was thereupon duly called by the commissioner

to be held on June 24, 1948, and due notice thereof was given by posting and publication in the manner required by statute.

A meeting of the voters was held at the time and place specified in the notice which was attended by 947 voters.

In accordance with section 1803 of the Education Law, the following resolution for the organization of the district was offered: "RESOLVED, that Central School District No. 1 of the Towns of Ontario, Walworth, Macedon, Marion and Williamson, Wayne County, and Webster and Penfield, Monroe County, as described in the order of the Commissioner of Education now before this meeting, *be organized* and a *central school* for instruction in elementary or elementary and high school subjects be established." (Italics supplied.)

There were 473 votes cast in favor of its adoption; 470 votes were cast in opposition thereto and 4 ballots were blank. The chairman of the meeting declared the proposition lost. "The affirmative vote of a majority of the qualified voters present shall be required on the adoption of a resolution." (Education Law, § 1803, subd. 1.)

Subsequently the district superintendent and the chairman of the meeting joined in calling another special meeting in the central school district for the purpose of proceeding with the organization of such district on the theory that the resolution had been adopted. Thereupon, the plaintiffs, who were residents and owners of real property in the town of Walworth, Wayne County, which is assessed for school tax purposes, instituted this action naming the Commissioner of Education, the district superintendent and the chairman of the meeting as defendants, in which they seek a declaratory judgment under section 473 of the Civil Practice Act construing the statutory provisions applicable to such a school district.

The defendant moved to dismiss the action on the ground that under the provisions of section 1735 of the Education Law matters affecting school district elections are to be referred to the Commissioner of Education for his determination. That section reads as follows: "*Determination of election disputes.* All disputes concerning the validity of any district election or of any of the acts of the officers of such election shall be referred to the commissioner of education for determination and his decisions in the matter shall be final and not subject to review. The commissioner may in his discretion order a new election."

The merits of this controversy are not before us. A question is raised as to whether the resolution for the organization of the school district was adopted or not. It is apparent that if the

blank ballots are excluded the resolution was adopted. If the blank ballots are counted the resolution was lost. Obviously a basic election dispute, therefore, ensues.

Under section 1804 of the Education Law all of the provisions of that law relating to union free school districts, except as otherwise provided, are applicable to central school districts. Hence the provisions of section 1735 which we have quoted apply to a central school district.

We think the court below misapprehended the question presented for decision. We are convinced by a reading of the pertinent statutory provisions that this dispute is one which should have been referred to the Commissioner of Education. The theory upon which the Special Term reached its conclusion that this meeting did not fall within the purview of the statute is clearly untenable. It should be kept in mind that the resolution which was under consideration at the meeting was not for the establishment of a central school district. Those in attendance were voting in a central school district already laid out and established by the Commissioner of Education solely on the question whether such a district should be organized and a central school within the district established.

The Commissioner of Education lays out a central school district. It is a school district the instant he issues an order. It would have to be a school district in order that there be a school meeting of the district to pass upon the question as to whether such district should be organized. Organization merely means that a board of education and other officials be elected with authority to establish a central school for the pupils of the central school district. It is necessary that it be a " school district " and a school meeting within the district in order that the qualifications of voters be established. In order to vote at a school meeting (§ 2012) it is necessary among other things for a person to be a resident of a school district for at least thirty days prior to the school meeting in the district. It is to be noted that the vote for the organization of the central school district is a vote of a majority of the " qualified voters " present. It is not a meeting of the voters of each district comprising the central school district. That the statute recognizes the district as a central school district upon its being laid out by the Commissioner of Education is indicated many times in sections 1801, 1802 and 1803 of the Education Law. A conclusion that meetings of this kind are not school meetings or that there is not an existing school district irrespective of the action of the school meeting is without any basis in fact.

If the resolution had been adopted then, according to the theory of the lower court, the district would have come into existence. A holding that this section does not apply if the resolution is lost but would apply if the resolution were carried, or that it does not apply to the first part of the meeting but to the second part of the meeting would give rise certainly to a very curious anomaly. We have then had a meeting in a district which is organized and existing from the time it is established by order of the commissioner. We have had a school meeting in a fully organized district. The same meeting by statute then proceeds to elect the district officers (Education Law, § 1803, subd. 7). Illegalities may arise in the procedure at such election. Questions concerning illegal votes, majorities and others of a like nature are ever present. With the district functioning and a school meeting operating in respect to the election of officers, it surely cannot be said that section 1735 requiring election disputes to be referred to the Commissioner of Education would not be applicable.

We should not give the provisions of the Education Law relating to the formation of central school districts a strained and an absurd construction. The very purpose of this law is to settle expeditiously and permanently election issues in order that the children of the area involved will receive uninterrupted education facilities. It is also to be noted that section 1735 gives to the commissioner discretion when exigencies warrant to call a new election. The question for determination here is an extremely important one and transcends the issues involved upon the particular facts present. In our opinion the Supreme Court has no jurisdiction to decide the controversy; that duty is cast upon the Commissioner of Education. In view of our conclusion it is neither necessary nor proper to pass upon the question as to whether the proposition was adopted or rejected.

The order denying the motion to dismiss the complaint is reversed on the law, with $10 costs and disbursements to appellants, and the motion is granted, with costs. The order enjoining defendants from further action with regard to the organization of the district is reversed on the law and the motion denied, without costs.

BREWSTER, FOSTER and RUSSELL, JJ., concur; HILL, P. J., dissents.

Order denying the motion to dismiss the complaint reversed on the law, with $10 costs and disbursements to appellants, and the motion granted, with costs. The order enjoining defendants from further action with regard to the organization of the district is reversed on the law and the motion denied, without costs.