Samuel A. Spiegel, J.
 

 Plaintiffs, Annette Stern, as a taxpayer of Harrison, Westchester County, New York, and as president of Operation Wake Up — an organization of women’s groups united to defeat what is commonly referred to as the Equal Rights Amendment — and others, seek a preliminary injunction restraining the defendants, Werner Kramarsky, as Commissioner of the Division of Human Rights of the State of New York, and the Division of Human Rights itself from engaging in any activities to achieve approval of the proposed Equal Rights Amendment to the Constitution of the State of New York. The proposed amendment to the State Constitution, which is to be submitted to the voters of the State of New York on November 4, 1975, would add a "Section 13” to
 
 *449
 
 article I of the State Constitution, stating: "Equality of rights under the law shall not be denied or abridged by the State of New York or any subdivision thereof on account of sex”.
 

 Plaintiffs contend that the defendants are engaging in a campaign in support of the specified amendment, and as evidence of that campaign submit a copy of an August 25, 1975 inter-office memorandum of the Division of Human Rights addressed to certain of its staff members, which states,
 
 inter alia:
 
 "The Division of Human Rights is a member of the New York coalition for Equal Rights, a coalition of more than 70 organizations united in a statewide effort to achieve approval of the Equal Rights Amendment by the voters in November. The Division is asking you, our Advisory Council members, to help us educate the public about the Equal Rights Amendment.”
 

 Plaintiffs have also submitted copies of various flyers and pamphlets prepared by supporters of the Equal Rights Amendment, such as the New York Coalition for Equal Rights and the League of Women Voters, which are made available to the public at the defendants’ offices. Such a flyer prepared by the New York Coalition for Equal Rights in support of the Equal Rights Amendment states in part: "Its really quite simple. Either you believe that all people are created equal or you don’t. If you do * * *
 
 Vote Yes on Nov. 4th”.
 
 [Emphasis in the original.] It is further alleged by the plaintiff that the defendants are promoting the Equal Rights Amendment through a series of radio and televised broadcasts.
 

 Defendants cross-move to dismiss the complaint upon the grounds that: (1) the plaintiffs’ application seeks to abridge their rights of freedom of speech and association; (2) the defendants, pursuant to article 15 of the Executive Law, have the requisite statutory authority to engage in activities in support of the Equal Rights Amendment; and (3) the plaintiffs’ lack of standing to maintain this action.
 

 Regarding defendants’ initial argument, it does not appear that the plaintiffs are attempting to improperly abridge defendants’ rights of freedom of speech and association. Plaintiffs essentially argue that the defendants have no authority to support the Equal Rights Amendment in their official capacity. They do not suggest that either the commissioner or the personnel of the Division of Human Rights may be precluded from personally supporting the Equal Rights Amendment. Thus the issue raised by the instant application is not
 
 *450
 
 one concerning freedom of speech or association, but whether it is a proper function of a State agency to actively support a proposed amendment to the State Constitution which is about to be presented to the electorate in a State-wide referendum. It should be noted that by lending their support to the campaign underway for the passage of the Equal Rights Amendment, defendants not only provide certain promotional and advertising assistance, but they endow that campaign with all of the prestige and influence naturally arising from any endorsement of a governmental authority.
 

 The defendants argue that they "have the statutory authority to engage in activities in support of the Equal Rights Amendment”, specifically sections 290, 294, 295 and 300 of the Executive Law. These sections admittedly vest the Division of Human Rights with broad authority to promote and protect human rights; however, that authority must be construed in the context of the State and Federal Constitutions. Neither the language of the statutory authority relied on by the defendants nor the statutory scheme of our jurisprudence contemplates administrative agencies engaging in promotional activities in order to secure the passage of proposed constitutional amendments.
 

 The court has found no reported cases directly in point, and notwithstanding the comprehensive and considered briefs submitted by the plaintiff and the Attorney-General, they have apparently been similarly unsuccessful in finding reported authority directly in point. The defendants cite,
 
 inter alia, Abrams v Rockefeller
 
 (NY County Clerk’s Index No. 18881), in support of their cross motion to dismiss the plaintiffs’ action. In
 
 Abrams v Rockefeller (supra),
 
 plaintiffs sought to enjoin certain public officials from spending public funds in connection with the promotion of Proposition No. 1 (The 1973 Transportation Bond Issue) on the November 6, 1973 ballot. The court granted defendants’ cross motion to dismiss the complaint upon the grounds,
 
 inter alia,
 
 that the application was untimely, and that the plaintiffs lacked standing to maintain the action. Since
 
 Abrams v Rockefeller (supra)
 
 was dismissed on essentially procedural grounds, inapplicable to the action presently before the court, it does not constitute authority warranting dismissal of the plaintiffs’ action.
 

 In
 
 Matter of Olivieri (Ronan)
 
 (NY County Clerk’s Index No. 23334), petitioner — relying on section 8 of article VII and section 1 of article VIII of the New York State Constitution—
 
 *451
 
 sought a preliminary injunction restraining the respondents William J. Ronan, Metropolitan Transportation Authority and New York Transit Authority from promoting "Proposition #1” (The 1971 Transportation Bond Issue) on the November 2, 1971 ballot. Specifically the petitioner sought to restrain the Metropolitan Transportation Authority and the New York Transit Authority from permitting their employees to put up placards and posters for the private organization known as "Yes For Transportation In N. Y. State, Inc.” during the hours when these employees are employed in their regular duties, and permitting the use of the public transit conveyances and facilities space for the display of the placards and posters of "Yes For Transportation In N. Y. State, Inc.” promoting an affirmative vote on Proposition No. 1. Réspondents Ronan et al. cross-moved to dismiss the petition upon the grounds the petitioner lacked standing and the respondents had acted lawfully in authorizing the use of space on transit facilities under their jurisdiction, for the placement of posters and signs informing the public of the importance of a favorable vote on Proposition No. 1. By order dated November 1, 1971 the court granted petitioner Olivieri’s application for a preliminary injunction and denied respondents’ cross motion to dismiss the petition.
 

 The court is aware that the State Charter Revision Commission for New York City has recently solicited the opinion of the New York State Comptroller regarding the proper scope of publicity for the proposed charter revision which is to appear on the ballot in New York City on November 4, 1975. By correspondence dated June 24, 1975 (a copy of which the court
 
 sua sponte
 
 makes part of the file herein, together with copies of revised guidelines establish for publicizing the proposed charter revision for New York City) the State Comptroller wrote to the State Charter Revision Commission:
 

 "This is in reply to your letter of June 2, 1975, requesting the opinions of the Comptroller and the Attorney General as to whether funds of the Commission may be expended for publicity relative to the proposed charter and the extent to which and manner in which such funds may be used. Proposals include such expenditures as media advertising, direct mailing to voters, speakers, bureaus telephoning of voters, and a field organization to educate voters as to charter revision. * * *
 

 "As a general rule, state funds have not been used for the
 
 *452
 
 public promotion of propositions or proposed constitutional amendments. I have, on many occasions, advised State and Local government officials that public moneys may be used for the purpose of adequately informing the Public concerning a proposed State bond issue; but not to urge a 'yes’ or 'no’ vote.”
 

 The logic of the court’s determination in
 
 Matter of Olivieri (Ronan) (supra),
 
 and the opinion of the State Comptroller quoted above is inescapable. The spectacle of State agencies campaigning for or against propositions or proposed constitutional amendments to be voted on by the public, albeit perhaps well-motivated, can only demean the democratic process. As a State agency supported by public funds they cannot advocate their favored position on any issue or for any candidates, as such. So long as they are an arm of the State Government they must maintain a position of neutrality and impartiality.
 

 It would be establishing a dangerous and untenable precedent to permit the government or any agency thereof, to use public funds to disseminate propaganda in favor of or against any issue or candidate. This may be done by totalitarian, dictatorial or autocratic governments but cannot be tolerated, directly or indirectly, in these democratic United States of America. This is true even if the position advocated is believed to be in the best interests of our country.
 

 To educate, to inform, to advocate or to promote voting on any issue may be undertaken, provided it is not to persuade nor to convey favoritism, partisanship, partiality, approval or disapproval by a State agency of any issue, worthy as it may be.
 

 Public funds are trust funds and as such are sacred and are to be used only for the operation of government. For government agencies to attempt to influence public opinion on such matters inhibits the democratic process through the misuse of government funds and prestige. Improper expenditure of funds, whether directly through promotional and advertising activities or indirectly through the use of government employees or facilities cannot be countenanced. (NY Const, art VII, § 8; art VIII, § 1.) People of all shades of opinion and belief contribute these funds from one source or another. No agency may misuse "any such funds for promoting its own opinions, whims or beliefs, irrespective of the high ideals:or worthy cause it espouses, promotes or promulgates. The merits of the Equal Rights Amendment are not involved herein
 
 *453
 
 and the court is not asked to pass upon it, but rather the right of a State agency to advocate its passage.
 

 Moreover, as a taxpayer and as president of an organization campaigning against the Human Rights Amendment the plaintiff Annette Stern has requisite standing to maintain this action
 
 (Boryszenwski v Byrdges,
 
 37 NY2d 361; State Finance Law, art 7-A).
 

 Accordingly, the plaintiffs’ application for a preliminary injunction is granted to the extent of restraining the defendants from supporting, promoting, campaigning or otherwise acting to achieve passage of the proposed Equal Rights Amendment to the New York State Constitution at the election on November 4, 1975.
 

 Nothing in this decision however shall be construed as prohibiting the Division of Human Rights from engaging in activities to induce the public to vote on the proposed Equal Rights Amendment, or to inform the public of the facts contained in the proposed amendment, and to otherwise educate the public concerning the proposed amendment, without advocating either a positive or negative vote upon the amendment. Further, nothing herein shall be construed as prohibiting the Commissioner of Human Rights or the personnel of that agency from supporting or opposing the Equal Rights Amendment in their individual capacities as private citizens.