The Honorable Susan Wagle State Representative, Ninty-Ninth District 14 Sandalwood Wichita, Kansas 67230
Dear Representative Wagle:
You inquire concerning the legality of using public funds to hire a consultant. Evidently, the city of Wichita has contracted with an individual who (by the terms of his contract with the city) is to "advise the city relative to the dissemination of information on the public safety city wide sales tax referendum." You also question the city's motives in retaining this person because he has reportedly worked on the past campaigns of the mayor and three council members. You inquire whether the position should have been posted and whether the payment of $9,999.00 is, in actuality, "deferred compensation" for past campaign assistance.
We can dispose of these two latter questions first by referring to Wichita ordinances 2.04.100 and 2.04.110 which provide that the city manager is the administrative head of the city and no individual member of the commission can instruct or direct him unless the commission as a whole (after approval by a majority) agrees to issue such direction to the city manager. Wichita administrative regulation no. 7 gives the city manager the authority to select a consultant and to execute a contract for services where the consultant fees are less than $10,000 — which is the situation here. It is our understanding that this person is an independent contractor and not a city employee and, consequently, there is no federal or state law or ordinance which impacts on the city manager's selection. As far as whether the contract price of $9,999 is "deferred compensation" for past political services, we have been presented with no facts which would support your concern and therefore, offer no opinion on the matter.
We now address the gravamen of your request which concerns the legality of using public funds to hire a consultant to advise the city regarding an upcoming sales tax election. In general, municipalities may give public funds to private individuals as long as it is for a public purpose and promotes the public welfare. Duckworth v. City of Kansas City,243 Kan. 386 (1988). However, there has been a uniform judicial reluctance to sanction the use of public funds for election campaigns.Burt v. Blumenauer, 699 P.2d 168 (Or. 1985), Elsenau v. City of Chicago,165 N.E. 129 (Ill. 1929), Stanson v. Mott, 551 P.2d 1 (Cal. 1976), Minesv. Del Valle, 257 P.2d 530 (Cal. 1927), Mountain States Legal Corp. v.Denver School District, 459 F.2d 357 (D.Colo. 1978).
 "Uniform judicial reluctance to sanction the use of public funds for election campaigns rests on an implicit recognition that such expenditures raise potentially serious constitutional questions. A fundamental precept of this nation's democratic electoral process is that the government may not `take sides' in election contests or bestow an unfair advantage on one of several competing factions." Stanson v. Mott at p. 8 and 9.
In Kansas Electric Power Company v. City of Eureka, 142 Kan. 117
(1935), taxpayers sued to contest the validity of a bond election under which the city proposed to issue general obligation bonds to construct a building and purchase machinery to generate electricity. Allegations were made that the city commissioners used city funds to promote the cause. The court vitiated the bond election on other grounds but, indicta, registered its disapproval of city officials using public funds for pre-election campaign purposes. Consequently, it is our opinion that public funds may not be used to promote or advocate the position of a governing body on a matter which is before the electorate. However, this does not mean that public funds may not be expended to educate and inform the electorate. Numerous cases conclude that the use of public funds for advocacy purposes is not appropriate but funds to inform and educate the public is a valid public purpose. Stern v. Kramarsky, 375 N.Y.S.2d 235
(1975), Stanson v. Mott, supra, Citizens to Protect Public Funds v. Boardof Education, 98 A.2d 673 (N.J. 1953), In the Matter of Phillips,490 N.E.2d 542 (N.Y. Ct. of App. 1986).
 "It would be establishing a dangerous and untenable precedent to permit the government or any agency thereof, to use public funds to disseminate propaganda in favor of or against any issue or candidate. This may be done by totalitarian, dictatorial, or autocratic governments but it cannot be tolerated, directly or indirectly, in these democratic United States of America. This is true even if the position advocated is believed to be in the best interest of our country. To educate, inform, to advocate or promote voting on any issue may be undertaken, provided it is not to persuade nor to convey favoritism, partisanship, partiality, approval or disapproval . . . of any issue, worthy as it may be." Stern at p. 239.
In Attorney General Opinion No. 93-33 we concluded that school districts have an obligation to educate regarding school district issues to be voted on by the electors. However, a school district does not have the authority to advocate a position on issues to be voted on by electors and the officers and staff of the school district must maintain a semblance of neutrality.
The problem is distinguishing between advocacy of the government's position in an election campaign and providing information to educate voters. In Stanson v. Mott, supra, the court concluded that the propriety of expenditures depends upon a careful consideration of such factors as the style, tenor, and timing of information put out under the auspices of the government but that no hard and fast rule governs each situation.
The contract with the political consultant at issue here appears to contemplate a situation where the consultant advises the city concerning the dissemination of information relative to the sales tax referendum and we offer no opinion concerning whether the city is, in fact, using the political consultant to promote and/or advocate the commission's position because we have no such facts.
Summarizing our opinion, it appears that the political consultant was retained pursuant to Wichita ordinances and administrative regulations. Furthermore, it is our opinion that the public purpose doctrine does not encompass the use of public funds to promote or advocate a governing body's position on a matter which is before the electorate. However, public funds may be expended to educate and inform regarding issues to be voted on by the electorate.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Feighny Assistant Attorney General
RTS:JLM:MF:jm