86 N.Y.2d 225 (1995)
654 N.E.2d 1226
630 N.Y.S.2d 978
In the Matter of Robert L. Schulz et al., Appellants, et al., Petitioners,
v.
State of New York et al., Respondents.
Court of Appeals of the State of New York.
Argued April 26, 1995.
Decided June 14, 1995.
Robert L. Schulz, Glens Falls, Nicholas J. Selvaggio, East Northport, Gaetano V. Cruciani, Commack, and Salvatore J. Grenci, West Islip, appellants pro se.
Dennis C. Vacco, Attorney-General, Albany (Peter G. Crary, Victoria A. Graffeo and Peter H. Schiff of counsel), for State of New York and others, respondents.
Cahn Wishod & Lamb, Melville (Richard C. Cahn of counsel), for Commack Board of Education, respondent.
Chief Judge KAYE and Judges SIMONS, TITONE, BELLACOSA and SMITH concur with Judge LEVINE; Judge CIPARICK dissents in part in a separate opinion.
*229 LEVINE, J.
Plaintiffs in this citizen-taxpayer action appeal as of right pursuant to CPLR 5601 (b) from so much of an order of the Appellate Division (205 AD2d 912) which affirmed the dismissal of their third, sixth and eighth causes of action in their complaint-petition (hereinafter the complaint). The complaint, dismissed in its entirety by Supreme Court, set forth eight separate, factually unrelated causes of action having in common only that all alleged that various actions by State and local governmental officials constituted the use of public funds for private purposes in violation of article VII, § 8 (1) and article VIII, § 1 of the New York Constitution.
Plaintiffs also seek to bring up for review pursuant to CPLR 5501 (a) (1) a prior nonfinal order of the Appellate Division (198 AD2d 624) which reversed Supreme Court's order referring to a Referee plaintiffs' motion to hold defendant Commack Board of Education in contempt for proceeding with a *230 scheduled school board referendum in violation of that court's order temporarily staying the board from conducting the referendum.
Plaintiffs' third cause of action alleged that the Commack Board of Education, using public funds, had prepared and distributed false promotional materials in favor of an affirmative vote on an $11.7 million bond proposition scheduled for a public referendum on October 14, 1992. Plaintiffs sought injunctive relief against holding that referendum and a declaratory judgment that the defendant State Department of Education must review in advance and approve all election literature prepared by any school district. One day before the referendum was to take place, Supreme Court granted an order staying the Commack Board of Education from holding the scheduled referendum before October 16, the return date of the show cause application for injunctive relief. The school board filed a notice of appeal from the court's October 13 order and held the referendum as scheduled. As previously noted, the Appellate Division reversed Supreme Court's order directing a reference on plaintiffs' motion to hold the school board in contempt for violation of the order staying the referendum, and dismissed plaintiffs' contempt application.
Plaintiffs' sixth cause of action was targeted against defendant Mario M. Cuomo, then Governor, defendant Vincent Tese, then Commissioner of Economic Development, defendant State Democratic Committee and the Governor's campaign committee, known as The Friends of Mario M. Cuomo Committee, Inc. That cause of action alleged that the publication and July 1992 mailing of a newsletter entitled, "The Voice of the New, New York" by the Governor's Office of Economic Development constituted the use of State moneys to serve the private political purposes of the Governor, his campaign committee and the State Democratic Committee, in violation of article VII, § 8 (1) of the New York Constitution.
Plaintiff's eighth cause of action alleged that the unconstitutional uses of public funds as set forth elsewhere in the complaint violated their rights under the Fifth and Fourteenth Amendments of the United States Constitution as a taking of their property without due process of law.
We modify by reversing the dismissal of plaintiff's sixth cause of action, reinstating that claim, and otherwise affirm.

I.
The Appellate Division properly affirmed the dismissal of *231 plaintiffs' third cause of action. In that cause of action, plaintiffs sought to enjoin or invalidate the results of the Commack School District's bond referendum held October 14, 1992 because of the alleged distribution at public expense of partisan and false promotional literature regarding that referendum by the Commack Board of Education. The Appellate Division and Supreme Court correctly concluded that, under Education Law § 2037, exclusive original jurisdiction to determine that claim resided in the State Commissioner of Education. Section 2037 states unequivocally that "[a]ll disputes concerning the validity of any district * * * election * * * shall be referred to the commissioner of education for determination * * *. The commissioner may in his [or her] discretion order a new * * * election" (emphasis supplied).
The courts have long interpreted Education Law § 2037 and its predecessor statute as conferring exclusive original jurisdiction upon the Commissioner of Education regarding all disputes over the validity of school district meetings and elections (see, Finley v Spaulding, 274 App Div 522, 526; Matter of Markert v Wilson, 284 App Div 1086, 1087; see also, Summerville v Roosevelt Union Free School Dist., 128 AD2d 769). The advantage of this course chosen by the Legislature is to provide an expeditious and more uniform resolution of these kinds of disputes (Finley v Spaulding, 274 App Div, at 526, supra; Matter of Pacos v Hunter, 29 Misc 2d 404, 405 [Jasen, J.], affd 14 AD2d 990, appeal dismissed 11 N.Y.2d 1112). The Commissioner of Education has exercised jurisdiction under section 2037 to hear complaints similar to that of plaintiffs here, that a school board has unlawfully used taxpayers' funds to promote a position in a district election (see, Matter of Chaplin [Newfane Cent. School Dist.], 29 Ed Dept Rep 388 [No. 12,329]; Matter of Weaver [Pine Plains Cent. School Dist.], 28 Ed Dept Rep 183 [No. 12,076]). Moreover, the Commissioner of Education could have granted the stay plaintiffs sought here from Supreme Court had they addressed their complaint to the Commissioner in the first instance (see, 8 NYCRR 276.1).
Contrary to plaintiffs' contention, judicial review of any unfavorable decision by the Commissioner of Education regarding a complaint made pursuant to Education Law § 2037 would have been available and could have fully addressed their claim that false and partisan promotional materials *232 were disseminated at school district expense (see, Matter of Phillips v Maurer, 67 N.Y.2d 672; Matter of Capobianco v Ambach, 112 AD2d 640).
That plaintiffs' complaint regarding the school board's distribution of the allegedly tainted materials was couched in terms of a constitutional violation did not obviate the statutory mandate to originate the matter before the Commissioner of Education. A constitutional claim that may require the resolution of factual issues reviewable at the administrative level should initially be addressed to the administrative agency having responsibility so that the necessary factual record can be established (see, Matter of Roberts v Coughlin, 165 AD2d 964, 965-966; Matter of Fichera v City of New York, 145 AD2d 482, 484; Matter of Dozier v New York City, 130 AD2d 128, 134-135). Moreover, merely asserting a constitutional violation will not excuse a litigant from first pursuing administrative remedies that can provide the requested relief (see, id.; accord, Matter of Patterson v Smith, 53 N.Y.2d 98, 103-104 [merits of petitioner's due process claim not addressed because he failed to exhaust his administrative remedies]). Thus, plaintiffs' third cause of action was properly dismissed for lack of subject matter jurisdiction.
The Appellate Division also quite correctly reversed Supreme Court's order of reference on plaintiffs' motion to hold the Commack Board of Education in criminal contempt, and then denied their motion. As previously explained, under clear and long-established precedent, as well as unambiguous statutory language, Supreme Court lacked original subject matter jurisdiction over plaintiffs' third cause of action. Hence, Supreme Court also was without jurisdiction to entertain and then grant the provisional remedy plaintiffs sought in connection with that cause of action, that is, an order temporarily staying the referendum scheduled for October 14, 1992. Under those circumstances, the order staying the referendum was so manifestly lacking in validity that its disobedience cannot be punished as a contempt (Matter of Fish v Horn, 14 N.Y.2d 905, 906; People ex rel. Lower v Donovan, 135 N.Y. 76, 79; DiFate v Scher, 45 AD2d 1002, 1003).

II.
Plaintiffs' eighth cause of action must also fail. Plaintiffs have not alleged any actual appropriation of their individual property by the governmental action they describe, or even an *233 indirect invasion of their specific property rights through regulation of the use thereof (cf., Lucas v South Carolina Coastal Council, 505 US 1003). They merely alleged that governmental revenues, concededly acquired lawfully through State or local tax levies, have been misused or misapplied to private purposes. Plaintiffs, thus, have not validly alleged any violation of the Due Process or "Takings" Clauses of the Federal Constitution (US Const 5th, 14th Amends).

III.
We, however, reach a contrary conclusion regarding dismissal of plaintiffs' sixth cause of action. In that cause of action, plaintiffs alleged that in July 1992 the State Office of Economic Development, at the direction of Governor Cuomo and Commissioner Tese, printed and distributed by United States mail at State expense "The Voice of the New, New York" newsletter "to serve the individual and private purposes of Governor Cuomo, the New York Democratic State Committee and Mario Cuomo's campaign committee known as Friends of Mario M. Cuomo Committee, Inc." (complaint ¶ 166). They allege that such use of public funds for the partisan political purposes of and advantages to those defendants violated article VII, § 8 (1) of the New York Constitution. That provision, as relied upon by plaintiffs, reads as follows:
"1. The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking."
We have previously described the history and purposes underlying the adoption of article VII, § 8 (see, Wein v State of New York, 39 N.Y.2d 136, 142-144; see also, People v Ohrenstein, 77 N.Y.2d 38, 50-51). The prohibition against gifts or loans to private enterprises was first incorporated into the Constitution in 1846, in reaction to the prior practices of subsidizing private railroad and canal companies through long-term State debt obligations, which the State ultimately was forced to pay when many of those private enterprises failed during the depression of 1837-1842 (Wein v State of New York, supra, at 143-144). Thus, subsidization by gifts of public funds to private undertakings, or by pledging public credit on their behalf, was banned, irrespective of how beneficent or desirable to the public the subsidized activity might seem to *234 be (see, People v Ohrenstein, 77 NY2d, at 51, supra; People v Westchester County Natl. Bank, 231 N.Y. 465, 475 [invalidating issuance of State bonds to fund veterans' bonuses]). And this remains so even when the subsidized private organization performs functions beneficial to the public (see, Fox v Mohawk & Hudson Riv. Humane Socy., 165 N.Y. 517 [invalidating law making dog license fees payable to humane society]).
We think it is unassailable that the use of public funds out of a State agency's appropriation to pay for the production and distribution of campaign materials for a political party or a political candidate or partisan cause in any election would fall squarely within the prohibition of article VII, § 8 (1) of the Constitution. Manifestly, using public moneys for those purposes would constitute a subsidization of a nongovernmental entity  a political party, candidate or political cause advanced by some nongovernmental group. Contrastingly, a governmental agency does not violate article VII, § 8 (1) merely by using taxpayers' funds for the valid governmental purpose of encouraging the public to participate in the democratic process by voting in an election. Nor would that constitutional provision prevent the use of public funds to inform and educate the public, in a reasonably neutral fashion, on the issues in an election so that voters will more knowledgeably exercise their franchise.
In Matter of Phillips v Maurer (67 N.Y.2d 672, supra), we made the foregoing distinctions between a local school board's legitimate right to disseminate at public expense informational materials regarding its proposed budget preliminarily to the vote of the electorate on its approval, and the board's lack of authority "to disseminate information, at the taxpayers' expense, patently designed to exhort the electorate to cast their ballots in support of a particular position advocated by the board" (id., at 674).
It is true that in Phillips v Maurer (supra), the line between the use of public funds to inform voters and their use to promote an outcome of an election was drawn as a matter of statutory construction of a school board's powers under the Education Law (see, Education Law § 1709 [33]; § 1716). Nonetheless, in that case we cited with approval two authorities making the same distinction as a constitutional imperative under article VII, § 8 (1)  Stern v Kramarsky (84 Misc 2d 447) and 1980 Opinions of the State Comptroller No. 80-411. In the Phillips v Maurer decision we quoted the constitutional standard *235 articulated in Stern v Kramarsky for permissible election activities and dissemination of election literature at public expense: "`[t]o educate, to inform, to advocate or to promote voting on any issue may be undertaken, provided it is not to persuade nor to convey favoritism, partisanship, partiality, approval or disapproval by a State agency of any issue, worthy as it may be' (Stern v Kramarsky, 84 Misc 2d 447, 452; * * *)" (67 NY2d, at 674). We are satisfied that the guidelines set forth in Phillips v Maurer express the constitutional line of demarcation under article VII, § 8 (1).
Applying the foregoing standard to "The Voice of the New, New York" newsletter, we conclude that the document transgresses the constitutional boundary. It was disseminated on the eve of the Presidential campaign of 1992. Its subject matter covered one of the issues already then of primary interest in that campaign  welfare reform. Although the newsletter contained a substantial amount of factual information which would have been of assistance to the electorate in making an educated decision on whose position to support on that issue, the paper undisputably "`convey[ed] * * * partisanship, partiality * * * [and] disapproval by a State agency of [an] issue'" (Matter of Phillips v Maurer, supra, at 674 [quoting Stern v Kramarsky, supra, at 452]). Thus, the newsletter states:
"Led by the Bush Administration, Republicans in New York and across the nation are seeking to slash assistance to the needy.
"The Republicans appear to have devised a strategy of using distortions and half-truths about Medicaid and welfare to divide the people in a key election year."
The newsletter also reported the Governor's criticism of "President Bush and the Republicans for using welfare as the `Willie Horton issue of the 1992 campaign'".
While "The Voice of the New, New York" did properly urge the public to vote and to "[s]tudy the candidates", it also sought to enlist the public's support in opposition to the alleged Republican position on the welfare and Medicaid reform issues. Thus, the newsletter urged: "[y]ou can also write at any time to your local representatives. Tell them that welfare and Medicaid is a lifeline during troubled times, and that they shouldn't pull in the lifeline while so many people are in need". Moreover, it proceeded to ask the public to "vote *236 for the men and women who put people before politics", a thinly veiled entreaty to vote against the previously disparaged Republican stance on the issues addressed.
Finally, "The Voice of the New, New York" newsletter contained a tear-sheet message to be sent to the Governor for the individual recipient among the public to sign and fill in a mailing address and telephone number, stating:
"Dear Governor Cuomo,
"I agree with you. New York must continue its constitutional mandate to protect the needy. I join you in leading the fight to provide programs and services to those who need it most. Let's not scapegoat the poor."
The conclusion is unavoidable that the latter portion of the newsletter is "patently designed to exhort the electorate to [make an avowed, public commitment] in support of a particular position advocated by [one political faction]" (Matter of Phillips v Maurer, 67 NY2d, at 674, supra [emphasis supplied]).
In the foregoing respects, "The Voice of the New, New York" newsletter goes well beyond simply conveying information on a political issue and urging voters to participate in the democratic process. It is an unequivocal promotion of a partisan political position. Plaintiffs, therefore, have stated a valid cause of action under article VII, § 8 (1) of the New York Constitution in alleging that "The Voice of the New, New York" newsletter was prepared and disseminated at public expense. This remains so notwithstanding that the newsletter also "contains information that, standing alone, would be considered a proper attempt to educate the public" (Matter of Phillips v Maurer, 67 NY2d, at 674, supra [emphasis supplied]).[*] Thus, so much of the order of the Appellate Division as affirmed dismissal of plaintiffs' sixth cause of action should be reversed, and that cause of action should be reinstated.
Accordingly, the order of the Appellate Division should be modified, in accordance with the opinion herein, and as so modified, affirmed, without costs.
CIPARICK, J. (dissenting in part).
I respectfully dissent from *237 that part of the majority opinion that reinstates the sixth cause of action, and conclude that the newsletter constitutes proper and permissible government speech.
In People v Ohrenstein (77 N.Y.2d 38, 47), we specifically recognized that the myriad political functions a legislator performs to gain support in the community, including distributing newsletters and meeting constituents, are an inherent and legitimate part of an elected representative's job (see also, United States v Brewster, 408 US 501, 512). I would extend this proposition to reflect the fact that any elected official, such as the Governor, represents the interests of all citizens in the State, not only the official's constituents, and has an obligation to educate and inform the electorate on issues which may divide voters on party lines.
The newsletter at issue, the spring 1992 edition of "The Voice of the New, New York[:] Spotlight on Issues Affecting the NEW, New York," appears to be educational, focusing on statistics concerning welfare and Medicaid costs in an attempt to dispel what it characterizes as myths. A fair reading of this newsletter imparts two disparate views with regard to funding and reforming the programs that aid the needy, and, although the newsletter urges the recipient to vote, the decision on which platform to support remains with the voter. This is not a case where a specific proposition is presented to the voters, urging them to vote "yes" (see, Matter of Phillips v Maurer, 67 N.Y.2d 672, 674; Stern v Kramarsky, 84 Misc 2d 447 [public funds as trust funds]), nor is it a case where moneys were solicited from the voter to further a particular cause or candidate (see, Hoellen v Annunzio, 468 F.2d 522, 525, cert denied 412 US 953). The invitation to respond to the Governor does not constitute an improper exhortation or solicitation; rather it is a convenient follow-up for the voter who seeks further information. In fact, the timing of this newsletter  at least four months prior to the November election  underscores its informational character. Thus, I disagree with the majority's characterization of this newsletter as the "unequivocal promotion of a partisan political position" (majority opn, at 236) that is patently designed to exhort the electorate to cast their ballots in support of a particular position. Moreover, there is no evidence that the dissemination of this newsletter was intended to serve the private political purposes of the Governor, his campaign committee and the State Democratic Committee, as alleged by plaintiffs.
*238 It is never an easy task to distinguish between partisan advocacy designed to perpetuate the elected official's tenure and the "legitimate" partisan platform an incumbent may advocate. The latter is necessary to explain and defend the governmental policy which the elected official participates in shaping, and often creates the incentive for that person to retain the elected post (Shiffrin, Government Speech, 27 UCLA L Rev 565, 603; Hoellen v Annunzio, 468 F2d, at 525, supra). In this regard, the Governor and his executive agency must be permitted to perform legitimate political activities without the threat of a challenge that public moneys were spent in violation of the Constitution.
Accordingly, I would affirm the order of the Appellate Division in its entirety.
Order modified, etc.
NOTES
[*] The dissenter's reliance on People v Ohrenstein (77 N.Y.2d 38, supra) to justify the newsletter here because it had some educational content, is misplaced. Ohrenstein, as the dissent itself recognizes, refers only to the unique political functions of a legislator in the "`political' branch of government" (id., at 47).