Ciparick, J.
(dissenting in part). I respectfully dissent from *237 that part of the majority opinion that reinstates the sixth cause of action, and conclude that the newsletter constitutes proper and permissible government speech.
In People v Ohrenstein (77 NY2d 38, 47), we specifically recognized that the myriad political functions a legislator performs to gain support in the community, including distributing newsletters and meeting constituents, are an inherent and legitimate part of an elected representative’s job (see also, United States v Brewster, 408 US 501, 512). I would extend this proposition to reflect the fact that any elected official, such as the Governor, represents the interests of all citizens in the State, not only the official’s constituents, and has an obligation to educate and inform the electorate on issues which may divide voters on party lines.
The newsletter at issue, the spring 1992 edition of "The Voice of the New, New York[:] Spotlight on Issues Affecting the new, New York,” appears to be educational, focusing on statistics concerning welfare and Medicaid costs in an attempt to dispel what it characterizes as myths. A fair reading of this newsletter imparts two disparate views with regard to funding and reforming the programs that aid the needy, and, although the newsletter urges the recipient to vote, the decision on which platform to support remains with the voter. This is not a case where a specific proposition is presented to the voters, urging them to vote "yes” (see, Matter of Phillips v Maurer, 67 NY2d 672, 674; Stern v Kramarsky, 84 Misc 2d 447 [public funds as trust funds]), nor is it a case where moneys were solicited from the voter to further a particular cause or candidate (see, Hoellen v Annunzio, 468 F2d 522, 525, cert denied 412 US 953). The invitation to respond to the Governor does not constitute an improper exhortation or solicitation; rather it is a convenient follow-up for the voter who seeks further information. In fact, the timing of this newsletter — at least four months prior to the November election — underscores its informational character. Thus, I disagree with the majority’s characterization of this newsletter as the "unequivocal promotion of a partisan political position” (majority opn, at 236) that is patently designed to exhort the electorate to cast their ballots in support of a particular position. Moreover, there is no evidence that the dissemination of this newsletter was intended to serve the private political purposes of the Governor, his campaign committee and the State Democratic Committee, as alleged by plaintiffs.
*238 It is never an easy task to distinguish between partisan advocacy designed to perpetuate the elected official’s tenure and the "legitimate” partisan platform an incumbent may advocate. The latter is necessary to explain and defend the governmental policy which the elected official participates in shaping, and often creates the incentive for that person to retain the elected post (Shiffrin, Government Speech, 27 UCLA L Rev 565, 603; Hoellen v Annunzio, 468 F2d, at 525, supra). In this regard, the Governor and his executive agency must be permitted to perform legitimate political activities without the threat of a challenge that public moneys were spent in violation of the Constitution.
Accordingly, I would affirm the order of the Appellate Division in its entirety.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Smith concur with Judge Levine; Judge Ciparick dissents in part in a separate opinion.
Order modified, etc.