Hon. Robert R. Snashall Formal Opinion Chairman No. 96-F8 Workers' Compensation Board 180 Livingston Street Brooklyn, N Y 11248
Dear Chairman Snashall:
Your Counsel has asked for an opinion describing the extent to which the Board may undertake to educate the public and interested constituencies regarding the Governor's Workers' Compensation Law reform proposals.
As the agency charged with implementing the Workers' Compensation Law, it is appropriate that the Board explain the proposed changes and their anticipated effects to the public.
The limited New York case law on use of State funds to communicate with the public concerns matters to be presented to the public for decision at a referendum or election. Generally, the case law prohibits public funding of partisan advocacy aimed at persuading the public to vote a particular way. While the cases do not expressly address the issue of what a government entity may do to inform the public about proposed legislation, they provide some guidance.
In Matter of Schulz v. State of New York, 86 N.Y.2d 225 (1995), the petitioner alleged that distribution of a newsletter by the Department of Economic Development constituted use of public funds for partisan political purposes in violation of Article VII, § 8 of the State Constitution. That section provides in part that
 [t]he money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; . . .
In Schulz, the Court carefully examined the challenged newsletter and held that its publication violated the Constitution. The Court first articulated the governing standard.
 We think it is unassailable that the use of public funds out of a State agency's appropriation to pay for the production and distribution of campaign materials for a political party or a political candidate or partisan cause in any election would fall squarely within the prohibition of article VII, section 8, paragraph 1 of the Constitution. . . . Contrastingly, a governmental agency does not violate article VII, section 8, paragraph 1 merely by using taxpayers' funds for the valid governmental purpose of encouraging the public to participate in the democratic process by voting in an election. Nor would that constitutional provision prevent the use of public funds to inform and educate the public, in a reasonably neutral fashion, on the issues in an election so that voters will more knowledgeably exercise their franchise.Emphasis supplied; 86 N.Y.2d at 234.
The Court reiterated the view it took in Phillips v. Maurer, 67 N.Y.2d 672
(1986). In that case, the Court examined material distributed by a school district which described the need for passage of a proposed bond issue and expressly urged readers to vote "yes". The Court acknowledged that the school board was authorized to spend public money to educate the public about its budget proposals but held that the board's authority did not extend to dissemination of information, at the taxpayers' expense, patently designed to exhort the electorate to cast their ballots in support of a particular position advocated by the board.67 N.Y.2d at 674.
The Court in Schulzthen applied those guidelines to the challenged newsletter. It found that the newsletter improperly "sought to enlist the public's support in opposition" to a political party's alleged position and in favor of the Governor's policies. The Court concluded that, as a whole, the newsletter constituted an unequivocal promotion of a partisan political position, even though it contained some material that, standing alone, would have been considered a proper attempt to educate the public. Id., at 235-236, citing, Phillips, 67 N.Y.2d at 674.
Courts in other jurisdictions have applied similar standards. In Citizensto Protect Public Funds v. Board of Education, 13 N.J. 172, 98 A.2d 673
(1953), New Jersey's highest court reviewed materials distributed by a school board prior to a referendum on a proposed bond issue. The materials contained a lengthy description of the circumstances necessitating increased funding and the probable tax ramifications. It also included, however, two pages headed "vote yes" and a section listing the many dire consequences of a "no" vote. The court concluded the issue was moot because the election had been held, but, in an opinion by then-Justice William J. Brennan, Jr., it commented on the board's actions because of "the importance of the question". 98 A.2d at 674, 676.
The court noted that the school board had implied power to make reasonable expenditures to give voters relevant facts to aid them in reaching an informed judgment, as long as the board's presentation was fair and included all consequences of the proposal, good and bad. The court determined that the board did not make a fair presentation of the facts when it urged voters to vote "yes" and emphasized the dire consequences of a "no" vote. 98 A.2d at 676-77.
We conclude, in accord with the guidelines discussed above, that the Workers' Compensation Board may seek support for the Workers' Compensation Law reform proposals in the context of undertaking to educate and inform the public about the proposals. The Board may explain the changes, the necessity for the changes and their impact, the anticipated fiscal ramifications and provide other relevant information to assist the public in understanding the legislative proposals. These activities are consistent with the general responsibilities of government to provide for an informed citizenry.
They are distinguishable from the newsletter that was condemned by the Court of Appeals in Matter of Schulz v. State of New York, 86 N.Y.2d 225
(1995) for its inclusion of blatantly political rhetoric. They are also distinguishable from the facts in Phillips v. Maurer, 67 N.Y.2d 672
(1986) where the Court of Appeals found that a school district may not urge voters to vote yes prior to a scheduled budget vote.
Seeking of support for a legislative proposal in the context of educating the public as to the proposal's main provisions and their impact is consistent with the responsibilities of government to inform its citizenry as to programs and proposals presented and supported by their representatives.
Very truly yours,
DENNIS C. VACCO, Attorney General