[992 NYS2d 637]

HOWARD LEIB et al., Petitioners, v JAMES A. WALSH et al., in Their Official Capacities as Commissioners of the New York State Board of Elections, et al., Respondents.

Supreme Court, Albany County, September 17, 2014

### APPEARANCES OF COUNSEL

*Neil A. Steiner* for petitioners.

*Kathleen O'Keefe* for New York State Board of Elections, respondent.

### OPINION OF THE COURT

PATRICK J. MCGRATH, J.

Petitioners Howard Leib, Susan Lerner, Eric Walker, and Eleanor Moretta bring this petition against respondents James A. Walsh, Douglas A. Kellner, Andrew J. Spano and Gregory P. Peterson as Commissioners of the New York State Board of Elections (SBOE) seeking the following relief: (1) a declaration and determination that the abstract and proposal number one language are misleading and do not accurately describe the redistricting amendment, in violation of article VII, § 8 (1) of the New York State Constitution and Election Law § 4-108; (2) an injunction restraining the SBOE from disseminating the abstract and the proposal number one language or including them on the November 2014 ballot; and (3) costs and disbursements, including attorneys fees. The court grants leave for Citizens Union of the City of New York to file their amicus curiae brief and the court has considered it in connection with the petition. In addition to the submissions of the parties, this court heard oral argument on September 12, 2014.

In 2012, the legislature approved a concurrent resolution to amend sections 4 and 5 and to add section 5-b to article III of the State Constitution to change the manner in which district apportionment would be carried out starting in 2020. (*See* 2011 NY Senate-Assembly Bill S6698, A9526.) The concurrent resolution was approved by the legislature again in 2013. (*See* 2013 NY Senate-Assembly Bill S2107, A2086.) Accordingly, the proposed amendment is to be submitted to voters at the November 4, 2014 general election.

On July 29, 2013, the SBOE certified that the proposed amendment will appear on the ballot in the following form:

"The proposed amendment to sections 4 and 5 and

addition of new section 5-b to Article 3 of the State Constitution revises the redistricting procedure for state legislative and congressional districts. The proposed amendment establishes [an independent] redistricting commission every 10 years beginning in 2020, with two members appointed by each of the four legislative leaders and two members selected by the eight legislative appointees; prohibits legislators and other elected officials from serving as commissioners; establishes principles to be used in creating districts; requires the commission to hold public hearings on proposed redistricting plans; subjects the commission's redistricting plan to legislative enactment; provides that the legislature may only amend the redistricting plan according to the established principles if the commission's plan is rejected twice by the legislature; provides for expedited court review of a challenged redistricting plan; and provides for funding and bipartisan staff to work for the commission. Shall the proposed amendment be approved?" (SBOE, *Form of Submission of Proposal Number One, An Amendment*, at 1, available at http://www.elections.ny.gov/NYSBOE/ Elections/2014/Proposals/ProposalOneFinal.pdf.)

The SBOE also certified an abstract of the amendment, which states, in pertinent part:

"The purpose of this proposal is to reform the process of establishing new state legislative and congressional district lines that the Constitution requires every 10 years. If the proposal is approved, [an independent] redistricting commission will be established to determine lines for legislative and congressional districts, subject to adoption of the commission's plan by the Legislature and approval by the Governor." (*Id.*)

Nature of the Proceeding/Standard of Review

Respondents urge this court to apply the "arbitrary and capricious" test of CPLR 7803 (3) to the instant petition, and argue that the Board is entitled to a high degree of judicial deference, especially when acting in the area of its expertise. Petitioners contend that the court need only decide whether the language is misleading.

■ The Election Law establishes a process for judicial review. "The wording of the abstract or form of submission of any

proposed amendment . . . may be contested in a proceeding instituted by any person eligible to vote on such amendment." (Election Law § 16-104 [2].) The abstract of such proposed amendment, proposition or question, prepared by the SBOE must "concisely stat[e] the purpose and effect thereof in a clear and coherent manner using words with common and everyday meanings." (Election Law § 4-108 [1] [d].) The courts have interpreted this to mean that the ballot proposal or abstract may be challenged as "misleading, ambiguous, illegal, or inconsistent with existing law." (*Matter of Gaughan v Mohr*, 77 AD3d 1475, 1476 [4th Dept 2010].)

While the petition states that it is a "special proceeding brought pursuant to Article 78 of the [CPLR]," it is premised on the contention that the phrase "independent" is misleading, and that the language represents improper governmental advocacy. Both claims implicate a challenge to the legality of the "form of submission" and the "wording of the abstract," and are thus subject to review in a proceeding brought pursuant to Election Law § 16-104 (2). Respondents are advocating for a standard not employed by any appellate court that has considered this issue; rather, the courts simply determined whether the proposed language is clear, coherent, or misleading. (*See Matter of Gaughan v Mohr* at 1476 ["the referendum question is not misleading, ambiguous, illegal, or inconsistent with existing law"]; *Matter of Mavromatis v Town of W. Seneca*, 55 AD3d 1455, 1456 [4th Dept 2008] [the underlying petition was properly invalidated because the resulting proposition would have been "misleading"]; *Matter of Marcoccia v Suffolk County Bd. of Elections*, 309 AD2d 958, 959 [2d Dept 2003] ["the question framed in Proposition No. 1 and the related abstract are misleading and do not indicate 'in a clear and coherent manner . . . the subject matter' of the proposed local law"]; *Matter of Association for Better Long Is. v County of Suffolk*, 243 AD2d 560, 560 [2d Dept 1997] ["the referendum question which the appellants seek to place on the ballot is misleading and does not indicate 'in a clear and coherent manner . . . the subject matter' " of the proposed local law (Election Law § 4-108 [2])]; *Matter of Schulz v New York State Bd. of Elections*, 214 AD2d 224, 230 [3d Dept 1995] ["The paragraph which describes the proposal concisely and accurately sets forth, in understandable terms, a brief summary of that which is set forth in the text and abstract"].) Therefore, this court rejects respondents' argument in this regard, and will make a determination consistent

with the above precedent, as to whether the language is "misleading, ambiguous, illegal, or inconsistent with existing law."

The Redistricting Amendment

The proposed amendment provides that each decade beginning in 2020, a 10-member "independent" redistricting commission will be established. Eight members will be appointed by the four state legislative leaders and the remaining two members will be appointed by the eight legislatively-appointed members.

Subdivision (f) of section 5-b of the amendment states:

"(1) In the event that the speaker of the assembly and the temporary president of the senate are members of the same political party, approval of a redistricting plan and implementing legislation by the commission for submission to the legislature shall require the vote in support of its approval by at least seven members including at least one member appointed by each of the legislative leaders.

"(2) In the event that the speaker of the assembly and the temporary president of the senate are members of two different political parties, approval of a redistricting plan by the commission for submission to the legislature shall require the vote in support of its approval by at least seven members including at least one member appointed by the speaker of the assembly and one member appointed by the temporary president of the senate." (2013 NY Senate-Assembly Bill S2107, A2086.)

In the event the legislature twice rejects district maps proposed by the commission, the legislature can draw and adopt its own maps. Subdivision (b) of section 4 of the proposed amendment provides:

"(b) The independent redistricting commission . . . shall prepare a redistricting plan to establish senate, assembly, and congressional districts every ten years commencing in two thousand twenty-one, and shall submit to the legislature such plan and the implementing legislation therefor . . . The implementing legislation shall be voted upon, without amendment, by the senate or the assembly and if approved by the first house voting upon it, such legislation shall be delivered to the other house immediately to be voted upon without amendment. If

approved by both houses, such legislation shall be presented to the governor for action.

"If either house shall fail to approve the legislation implementing the first redistricting plan, or the governor shall veto such legislation and the legislature shall fail to override such veto, each house or the governor if he or she vetoes it, shall notify the commission that such legislation has been disapproved. Within fifteen days of such notification and in no case later than February twenty-eighth, the redistricting commission shall prepare and submit to the legislature a second redistricting plan and the necessary implementing legislation for such plan. Such legislation shall be voted upon, without amendment, by the senate or the assembly and, if approved by the first house voting upon it, such legislation shall be delivered to the other house immediately to be voted upon without amendment. If approved by both houses, such legislation shall be presented to the governor for action.

"If either house shall fail to approve the legislation implementing the second redistricting plan, or the governor shall veto such legislation and the legislature shall fail to override such veto, each house shall introduce such implementing legislation with any amendments each house of the legislature deems necessary. All such amendments shall comply with the provisions of this article. If approved by both houses, such legislation shall be presented to the governor for action." (*Id.*)

Petitioners argue that the proposal and the abstract violate article VII, section 8 (1), which precludes the giving and lending of public money to aid any private entity or undertaking. Petitioners claim that the current language exhorts the electorate to cast their ballots in support of a particular position. The case law on the subject requires an "unequivocal promotion of a partisan political position." (*Matter of Schulz v State of New York*, 86 NY2d 225, 236 [1995]; *see also Matter of Phillips v Maurer*, 67 NY2d 672 [1986].) While the term "independent" may have a positive connotation, especially in the political realm, the court does not find anything in the abstract that seeks to induce a positive vote.

■ However, the court finds that petitioners' arguments concerning the term "independent" has merit. According to

Election Law § 4-108 (1) (d), the SBOE must prepare an abstract which "concisely stat[es] the purpose and effect thereof in a clear and coherent manner using words with common and everyday meanings." (Election Law § 4-108 [1] [d].) Merriam-Webster's Collegiate Dictionary defines "independent" as "not dependent; not subject to control by others; not affiliated with a larger controlling unit; not requiring or relying on something else; not contingent; not looking for one's opinions for guidance or conduct; not bound by or committed to a political party." The "common and everyday meaning" of the word "independent" implies a commission that has the freedom to make decisions, which are not subject to the influence of another.

The commission cannot be described as "independent" when 8 of 10 members are the handpicked appointees of the legislative leaders and the two additional members are essentially political appointees by proxy. While the proposed amendment establishes qualifications for the members of the commission,* each member's allegiance is obviously with the leader who appointed them. This is acknowledged by the voting requirement of the commission which is completely dependent on the makeup of each legislative body. To send a redistricting plan to the legislature, 7 out of 10 commission members must approve a plan. If the legislature is controlled by one party, then the seven favorable votes must include that of at least one member appointed by each of the four legislative leaders. If control of the legislature is split between the two major political parties, then the seven votes must include that of at least one member appointed by the Speaker of the Assembly and one member appointed by the Temporary President of the Senate. If seven members of the commission cannot agree on a redistricting plan, then the commission submits the plan or plans that received the most votes, along with a record of the votes taken. Additionally, votes by the Senate or Assembly on any redistricting plan also change according to political control, with a majority required if the houses are under different political leadership and a two-thirds supermajority if the houses are under the same political leadership. The court is not aware of any other law in New York State that has ever required a commission or

---

* Commission members cannot be or have been within the preceding three years a member of the New York State Legislature, United States Congress, or a statewide elected official; a state officer or employee or a legislative employee; a lobbyist registered in New York; or a political party chairman; they cannot be the spouse of a statewide elected official, of a member of the United States Congress, or of a member of the state legislature.

any other legislative body's vote approval to be dependent on the political makeup of the legislature. Respondent acknowledged this fact during oral argument. If the commission was truly "independent," there would be no need to tie their vote to the political makeup of the legislature. It is clear, and acknowledged by the respondents, that this voting schematic stands as a safeguard against one party dominance on redistricting. However, this does not make the commission independent.

Respondents argue that the commission is bound by newly created principles when it draws district lines, and that the legislature is bound by the same principles if the commission's plan is rejected. The amendment allows the commission to submit two plans for a vote without amendment. If the plans are twice rejected, the legislature can "introduce such implementing legislation with any amendments each house . . . deems necessary." (2013 NY Senate-Assembly Bill S2107, A2086.) If these principles were truly designed to "fundamentally change the Legislature's role and discretion in the redistricting process" as advocated by the respondent, there would be some direction in the amendment that actually connected the legislative vote on the proposed plan to the principles. In other words, not only can the legislature disapprove the commission's decision, but it can do so without giving any reason or instruction for future consideration of these new principles. The plan can be rejected for the purely partisan reasons that this commission was designed to avoid.

While the commission may independently create its own plan without legislative interference, the commission does not actually choose the district lines. The use of the word "independent," as per its "common and every-day meaning," would lead the voter to believe that the commission is free from political influence and that its work is not subject to further approval. Legislative semantics do not change the reality that the commission's plan is little more than a recommendation to the legislature, which can reject it for unstated reasons and draw its own lines. Even the means by which a plan obtains legislative approval changes with the political tides. Therefore, this court finds that the term "independent" is misleading, because the creation of the commission, its procedures and its ultimate outcome are all "subject to control by others."

Therefore, the court will grant the petition insofar as respondents are directed to delete the word "independent" from the ballot proposal and abstract. No adjective preceding the

word "commission" is necessary to indicate the subject matter of the proposed amendment in a clear and coherent manner.

The court reaches a different conclusion with respect to petitioner's argument concerning those portions of the proposal and abstract which describe the legislative procedures that follow if one house disapproves the commission's plan. The current language informs the voter that the amendment "subjects the commission's redistricting plan to legislative enactment" and "provides that the legislature may only amend the redistricting plan according to the established principles if the commission's plan is rejected twice by the legislature." (SBOE, *Form of Submission of Proposal Number One, An Amendment*, at 1, available at http://www.elections.ny.gov/NYSBOE/Elections/ 2014/Proposals/ProposalOneFinal.pdf.) Petitioners claim that the current language does not adequately describe the "special voting rules by which the Legislature exercises control over the Commission" and that the language employed is "designed to withhold relevant information from the voter." Petitioners claim that the language should include the phrase initially recommended by the Attorney General, specifically, that the legislature is the "default redistricting body if the commission's plan is not legislatively enacted." The court does not find anything incomplete, inaccurate or even misleading about the text in its current form, which in no uncertain terms informs the voter that the commission's plan is subject to legislative enactment.

Accordingly, it is ordered and adjudged that the instant petition is granted, without costs, to the extent that the Board is enjoined from disseminating the abstract and the proposal number one language with the term "independent commission" or including the term "independent commission" on the November 2014 ballot.